STATE, *ex rel.* HENRY T. TITUS, v. J. E. PEACOCK, as County Judge of Volusia County, O. G. Sage, as Supervisor of Registration of Volusia County, and E. A. Latham, as Chairman of the Board of County Commissioners of Volusia County, as and constituting the COUNTY CANVASSING BOARD OF VOLUSIA COUNTY.

170 So. 309.
Opinion Filed October 27, 1936.

*Horace D. Riegle,* for Relator;

*Scarlett & Futch* and *Horn & Ossinsky,* for Respondents.

PER CURIAM.—Titus and Beers were candidates at the 1936 June Democratic Primary Election for nomination to the office of Justice of the Peace of the Eighth District of Volusia County. Beers has been declared the nominee under a recanvass of the votes made by the Volusia County Canvassing Board, the respondents herein, after a recount conducted under the order of this Court granted following a tie vote between the candidates shown by the original election returns. The situation now is, as shown by the

record, that if all of the absentee votes cast by electors under Chapter 16986, Acts of 1935, by out of state voters, are deducted from the results of the canvass of the election returns, Titus will be the nominee, whereas to refuse to deduct them by denying this mandamus will leave the canvass showing Beers the nominee. It is impliedly admitted on the record that all of the votes cast by absentees under Chapter 16986, *supra,* were cast by persons who, had they personally appeared at the polls on election day, would have been entitled to vote. In this respect the present case differs from the controversy dealt with in State, *ex rel.* Gandy, v. Page, decided on the 28th day of September, 1936, wherein we held the absentee registration law—Chapter 16987, Acts of 1935, unconstitutional and consequently the voters affected thereby wholly disqualified to vote, whether in or out of the state on election day.

If as contended by the relator Chapter 16986, *supra,* is considered for the purposes of this argument as a valid Act, and is to be construed as requiring the out of state ballots received by the respondent County Judge to be placed in the ballot boxes and counted in the several precincts on election day instead of being transmitted by the County Judge to the County Canvassing Board to be by them counted, tallied and canvassed as part of the total vote, relator's remedy would be to mandamus the precinct inspectors to re-assemble and receive from the County Judge (or the Canvassing Board) the affected votes and thereupon count, tally and add them to their precinct returns and not to wholly disregard such votes as sought in the present case.

The rule is general that if ballots have been cast by voters who were, at the time, qualified to cast them, and such voters had at the time done all on their part that the

law required the voters to do to make their voting effective, an erroneous or even unlawful handling of the ballots by the election officers charged with such responsibility will not be held to have disfranchised such voters by throwing out their votes on account of erroneous procedure had solely by the election officers, provided the votes were legal votes in their inception, and are still capable of being given proper effect as such. 9 R. C. L. par. 102, pages 1093-1095, and cases cited. See also: State, *ex rel.* Hutchins, v. Tucker, 106 Fla. 905, 143 Sou. Rep. 754.

No universal rule can be laid down as to the constitutionality of absentee voters laws where the preparation of the ballot by the voter is authorized to be accomplished *inside* the state but away from the elector's particular polling place. Many such statutes exist and they usually have been held constitutional where proper safeguards are provided for the transmission of the ballot to legal polling places there to be counted. See: Straughan v. Meyers, 268 Mo. 580, 187 S. W. Rep. 1159. In at least one leading case in the United States it has been held that an out of state absent voters' law originating to meet an extraordinary emergency not contemplated by the constitutional requirement of personal presence of the voter at the polls on election day along with other voters similarly situated, was constitutional when so limited in its operation and effect. Thus in the Missouri case just referred to, a statute authorizing absentee voting by out of state voters serving as soldiers and sailors during the World War in 1917-1918 was held not to violate the organic provisions of that state's Constitution contemplating elections by ballot to be held within the state at fixed poliilng places on prescribed election days, because founded upon the circumstances that soldiers and sailors during the time of their service suffered an *enforced*

absence from home on election day, thereby being *unavoidably* prevented by the government itself from all opportunity to vote in the ordinary way, although constitutionally entitled to vote as other citizens were entitled. It was therefore held that the Legislature had power to set up a special method for World War soldiers and sailors to vote, in order to avoid their utter disfranchisement as voters by extraneous circumstances over which they as patriotic citizens could exercise no control and could not prevent. See: Jenkins v. State Board of Elections of North Carolina, 180 N. C. 169, 104 S. E. Rep. 346, 14 A. L. R. 1247.

On the other hand, the concensus of the best reasoned judicial opinions on the subject is that the right of voting for public officers must be exercised by the voter himself personally, within the state and at the polling places established for his voting district as lawfully provided for therein to be resorted to by voters generally; that absentee voting, being an exception to the general rule, cannot be authorized by the Legislature, except *ex necessitate rei;* that it is permissible only when the absentee voting statute provides in sufficient terms, that the absent voter's ballot shall not be deposited in the ballot boxes, nor the voter's name entered upon the poll lists, nor the vote counted until the ballot has first been made out by the voter himself upon a legal form of ballot, furnished to him under statutory safeguards and regulations equivalent in substance to those pertaining to personal voting by others at the prescribed polling places; that it must be transmitted by the voter to some election official exercising jurisdiction within the county wherein the voter resides, with power to receive it, examine its putative validity and thereupon cause it to be counted within the county of the voter's legal voting residence; that opportunity must be afforded to interested par-

ties to interpose objections to such absentee ballot, if it be found in law or in fact unauthorized to be cast according to the valid provision of law. See numerous cases cited in annotation 14 A. L. R. pages 1256, *et seq.*

In the present case, however, there is no contention that the originally challenged votes herein sought to be disregarded on a collateral attack against the same launched long after the election, are illegal votes in the sense that they were cast by persons not duly registered according to law, or by electors whose poll taxes were not duly paid so as to entitle them to vote, or by persons who were otherwise not entitled, or disqualified to vote at the particular election.

On the contrary, the most that is contended for by relator is that the Legislature exceeded its authority in providing for the particular votes to be cast in the manner authorized by Chapter 16986, Acts 1935, although such Act may or may not be constitutional in its application to particular voters, under the rules of law we have hereinbefore made reference to, dependent upon whether the voters were *unavoidably a*bsent from the state through some official obligation to the government to remain at their posts of duty at the points from which the ballots were sent in to be voted, or were absent simply in pursuit of their own pleasure, or business avocation, unconnected with the performance of any official governmental employment or service necessitating such absence from the state on election day.

The controversy involving the constitutionality of Chapter 16986, Acts of 1935, is therefore one that should be left undecided until appropriately presented in some litigation wherein the affected voters themselves may, if they desire, have an opportunity to intervene and be heard in defense of their rights, if any, that may exist under the alleged un-

constitutional absentee voting law—namely, Chapter 16986, *supra.*

It follows that grounds one, six and seven of the demurrer of respondent Sage to the alternative writ of mandamus should be sustained, and such will be the order of this Court in the premises.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.