STATE *ex rel.* JOE W. WHITLEY v. HOLLIS RINEHART, JR.

192 So. 819

En Banc

Opinion Filed October 10, 1939

Rehearing Denied January 17, 1940

*Joseph F. McPherson* and *J. M. Flowers,* for Relator;

*Charles A. Carroll* and *Morton B. Adams,* for Respondent;

*D. H. Redfearn, Harold Tannen* and *Albert B. Bernstein,* as *amici curiae*.

TERRELL, C. J.—In June, 1939, the City of Coral Gables held an election to elect three city commissioners, two for four years and one for two years. Voting machines were employed and there were 206 absentee ballots cast. Hollis Rinehart, Jr., received 733 votes by voting machine and 106 absentee votes or a total of 839 votes. Joe Whitley received 765 votes by voting machine and 73 absentee votes or a total of 838 votes. Wallace A. Bell received 759 votes by voting machine and 65 absentee votes or a total of 824 votes. Hollis Rinehart, Jr., was declared elected for a term of four

years and Joe Whitley for a term of two years   W. Keith Phillips, not a party to this litigation, was declared elected for a term of four years.

This is a proceeding in quo warranto by Joe Whitley to oust Hollis Rinehart, Jr., from the four-year term.   The petition alleges that he is usurping the office of city commissioner, that he was not legally elected for any term whatever and that a legal count of the vote will show that petitioner was elected for the four-year term.

This contention is based on the alleged illegality of the absentee vote.   He says that 50 of these were from without the State and were not legally voted, that five were actually present in the city on election day, that more than 30 were void and fraudulent because cast by those not bona fide residents of the city, that more than 30 were bona fide residents of cities other than Coral Gables and States other than Florida, that more than 30 were void because not returned to the clerk in the manner required by Section 436, Compiled General Laws of 1927, that more than 20 were void and illegal because the inner envelopes in which they were contained when mailed to the City were not plain and unmarked as required by law, and that none of them were cast, counted, and canvassed within two hours after the polls were closed as required by law.   The petition alleges that challenges were timely made to more than enough of the absentee ballots to change the result of the election to have entitled relator to a four-year term and to have defeated Hollis Rinehart, Jr.

This Court is committed to the doctrine that the voting and reception of illegal votes at an election does not affect its validity, unless it is shown that they were in such numbers as to affect the result.   State *ex rel* Pooser v. Webster, *et al.,* 126 Fla. 49, 170 So. 737.

.Relator contends that the face of his petition responds to this rule in that it shows that approximately 25 per cent of the total votes cast were absentee votes, that of the absentee votes approximately 25 per cent were illegal and void because cast by electors not citizens, residents, and inhabitants of the City of .Coral Gables and were not absent therefrom on official business, that challenges were made of a sufficient number of such ballots to have changed the result of the election, that the said illegal absentee ballots were without the fault of relator commingled with the absentee ballots lawfully cast and were sufficient to show that the result of the election was affected thereby.

It is a fact that limited to the vote cast by voting machine, which is not challenged, relator was high man, receiving thirty-two votes more than respondent. The absentee ballots show 73 votes for relator and 106 for respondent. When these were added to the machine votes, they gave relator 838 votes and respondent 839 or one vote lead. If there were in fact electors in the city on election day who had voted an absentee ballot such votes were Illegal and should not have been counted. Likewise if there were absentee votes cast by those not bona fide residents of and registered in the City of Coral Gables or who were residents of other cities or states than Florida, their votes were illegal and should not have been counted. There was a motion to quash and a return to the writ. As a defense both set up that the alleged illegal votes have been commingled with the legal ones, that it is not shown who the illegal ones were cast for or that if it was known who they voted for they would affect the result of the election. In addition, the return flatly contradicts the charge that any illegal votes were cast or improperly returned and canvassed.

In some aspects, this case is different from any case of the

kind that has been brought to our attention. The absentee votes are of two kinds, those cast from without the State under Chapter 16986, Acts of 1935, and those cast within the State under Chapter 7380, Acts of 1917, Section 429, *et seq.,* Compiled General Laws of 1927. The validity of the latter Act is not drawn in question.

As we shall subsequently show, each and every vote cast under Chapter 16986, Acts of 1935, was illegal and void and it may be that some of those cast under the latter Act were void for failure to comply with legal requirements. We do not depart from the rule that when the illegal votes can be determined, they will not void the election but in a case like this where only one vote separates the contestants and it is proven that illegal votes sufficient to affect the result were cast and the winning party profited by the doubtful or illegal vote, when as here, that vote can be segregated from the legal vote, the election as to it should be held illegal and void. The result of an election should not depend on an uncertainty. Harrison v. Stroud, 129 Ky. 193, 110 S. W. 828; Glenn v. Gnau, 251 Ky. 3, 64 S. W. (2nd) 168, 90 A. L. R. 1355; Nelley v. Farr, 61 Col. 485; Ann. Cas. 1918-A, 23, 9 R. C. L. 1148.

On this point, the pleadings squarely present the issue of whether or not duly qualified electors were in the city on election day who had cast an absentee ballot and whether or not absentee votes had been cast by those not duly registered and qualified in the city or who were in fact citizens of some other city and State. A jury unless affirmatively waived, is the forum before whom such issues should be settled. The cause will accordingly be referred to the circuit court for that purpose.

It is next contended that having accepted the two-year term as city commissioner and entered on his duty as such,

relator is not estopped to contest with respondent his right to a four-year term.

If the two offices had been different and clothed with different functions, there might be merit to this contention but it is shown that relator and respondent were voted for for places on the city commission, when three were to be elected, all of equal dignity, and that their tenure was determined by the number of votes received. W. Keith Phillips received a total of 882 votes and was declared elected for a four-year term. Respondent received a total of 839 votes and was declared elected for the other four-year term while relator received a total of 838 votes and was declared elected for the two-year term. There is no incompatibility whatever in the offices; they can in no sense be said to be another or different office; nothing is involved but the question of tenure and this can be raised any time before the two-year term expires. State v. Clark, 177 Ala. 188, 59 So. 259.

We are next confronted with the question of the constitutional validity of Chapter 16986, Acts of 1935, and Chapter 16373, Acts of 1933, the former relating to absentee voting without the State and the latter to absentee voting as applied to the city.

Chapter 16373, Acts of 1933, amended the charter of the City of Coral Gables by authorizing its city commission to provide by ordinance for electors to vote by mail who may be without the State on the day of the election. Chapter 16986, Acts of 1935, dealt with the same subject matter as applied to both State and municipal elections and we think was an implied repeal of Chapter 16373, but whether this be true or not both chapters must be read and construed in the light of the provisions of the Constitution affecting registration and elections.

Section 1 of Article VI of the Constitution of Florida makes registration a prerequisite to vote; Section 2 of the same article commands the Legislature to make adequate provision for registration of all electors; Section 6 requires that all elections be by ballot and Section 9 commands the Legislature to enact laws to preserve the purity of the ballot. Section 26 of Article III commands the Legislature to enact laws to preserve the purity of elections.

One cannot read Article VI and not be impressed with the importance of the ballot and the safeguards that the makers of the Constitution felt impelled to throw around its purity. Registration and voting are sovereign duties imposed on every citizen of a democracy. We hear a lot of loose talk about the right to vote but as distinguished from a duty, there is no such thing as a right to vote. Voting is the most responsible duty the citizen of a democracy is called on to perform. It is a duty not to be exercised flippantly, for in its performance, our social and economic status, our ideals, and general well being are determined. Hence the mandate of the Constitution for a pure ballot and pure elections.

No democracy can long endure if the electorate is corrupted and enticed to depart from the constitutional pattern on election day. Without reference to any party hereto, it is not amiss to say that the most abject traitor to democratic institutions is the one who buys or intimidates the electorate for personal gain and next to him is the voter who habitually goes into the open market and pawns his vote to anyone who will purchase it. They are the termites and screw-worms of democracy and if not exterminated, they will surely wreck the ship of state as the latter will destroy the house or the dumb creature on which they feed. It is a strange paradox that they parade as human beings

and are protected by law against homicide. Such enemies of the cotton crop, the tobacco crop, or the citrus crop would be relentlessly chased and destroyed. If democracy is as precious as we profess it to be, why not pursue its enemies as relentlessly as we do the boll weevil, the tobacco bug, the Mediterranean fruit fly or the bean beetle?

The Constitution contemplates that the franchise be exercised by the elector in person at the appointed polling places. Absent voting is an outgrowth of modern social and economic conditions and was devised to accommodate those engaged in military or civil life, whose duties as such made it impracticible for them to attend their polling places on the day of the election. It was not intended as a convenience for those who absented themselves on account of pleasure or free will. This must be the rule because voting is a public duty which rises above one's personal responsibility.

Chapter 7380, Acts of 1917, Section 429, *et seq*, Compiled General Laws of 1927, provides for absent voting in any county of the State when the elector is unavoidably absent from the polling place Chapter 11824, Acts of 1927, provides for the elector to vote in his home county on certain days before the day of the election for like reasons. Chapter 19333, Acts of 1939, provides for the registration of electors absent from the State in the service of the United States during the period of registration. All of these Acts are accompanied by affidavits and certificates designed to carry out their true import, to-wit: to vote in case of enforced absence from one's polling place on election day.

Such was the import of Section 1, Chapter 16986, Acts of 1935, as follows:

"Section 1. That any qualified elector who is required to be absent from the State of Florida for a period of more

than fifteen days next prior to and "including the day of any primary, general, school, municipal, or special election, may make written request by mail to the county judge of the county of his or her legal residence, or to the clerk of the municipality, in case of municipal elections, for an official ballot to be used at his or her voting precinct or ward at such election."

It will be seen that the quoted section provides for absentee voting for electors who are "required" to be absent from the State for more than fifteen days prior to the primary, school, general, municipal or special election. Section 1 is then followed by a prescribed form of affidavit to secure a ballot and that in turn is followed by a prescribed form of affidavit to be attached to or printed on the envelope in which the ballot is returned to his polling place.

Though made a part of the statute, neither affidavit was designed to preserve the purity of the ballot. The first merely announces that the voter expects to be absent from the State on the occasion of the election and the second is in substantially the same language; neither implies that the voter is required to be away from the State for any time. In fine, they omit any language pertaining to qualification to vote and the election officials are powerless to enforce any such requirements. By their very terms, they provide a means to escape any qualification whatever and make it possible to corrupt rather than preserve the purity of the ballot. Read as a whole, the Act is at variance with other absentee voting statutes and when the affidavits and the body of the Act are considered together, they are so contradictory and duplicitous as to be impossible of enforcement.

Election laws should be construed liberally in favor of the right to vote but this is not the rule as to absentee voting

laws. Being in derogation of the common law, they should be strictly construed. The reason for the difference is that purity of the balot is more difficult to preserve when voting absent than when voting in person. Guice v. McGhee, 155 Miss. 858, 124 So. 643; Straughan v. Meyers, 268 Mo. 580, 187 S. W. 1159; *In re.* Baker, 213, N. Y. Supp. 425, 126 Misc. 49; Opinion of Justices, 44 N. H. 633.

Chapter 16986 also leaves the way open for fraud in that it does not provide before whom the oath should be signed though it was known that it must be taken out of the State. It might be taken before a blacksmith or a mechanic or even an officer that has no knowledge of the law of Florida. Absentee voters who are away from their home precinct but within the State are not so loosely restricted.

The settled policy of absentee voting laws is to limit their application to electors who are absent from their voting precinct on election day by reason of military or civic necessity. This is also the effect of Chapter 19333, Acts of 1939, providing for absentee registration. This must be the rule; otherwise purity of the ballot is cast to the discard. The litigation that has arisen in this State from violation of absentee ballot laws, including the case of Newman v. State, now pending in this Court admonish the wisdom of this policy.

Absentee voting was not in the minds of the makers of the Constitution when that instrument was cast. The rigidity of its enforcement is an open question in this State but wisdom and experience teach us that it has been a fruitful means of corrupting the ballot if not carefully safeguarded. It should therefore be limited and authorized only in case of *ex necessitate rei.*

It follows that Chapter 16986, Acts of 1935, is so ambigu-

ous and loosely constructed that it cannot be enforced if purity of the ballot is to be observed, so any and all ballots cast under it are illegal and should not be counted. The writ will therefore be dismissed with leave to file copies of the pleadings in the Circuit Court of Dade County, there to determine the issues raised by the pleadings. State *ex rel.* Landis v. Gamble, 112 Fla. 2, 150 So. 130; State *ex rel.* Clark v. Klingensmith, 126 Fla. 124, 170 So. 616. If the circuit judge finds from the evidence that the allegations of the petition as to absentee votes cast under Chapter 16986 and as to absentee votes cast by electors who were actually in the city on election day and as to those who were not registered and qualified to vote in the city are substantially proven or proven to that extent that grave doubt is placed on the result of the election, he is hereby ordered to hold the election illegal as to the absentee votes and order the appropriate City officials to declare the result on the basis of the machine vote as to relator.

It is so ordered.

WHITFIELD, P. J., and BROWN, BUFORD, CHAPMAN and THOMAS, J. J., concur.