89 So.2d 870 (1956)
Charles PARRA, Appellant,
v.
C.B. HARVEY, Dello Cobo, Louis Carbonell, Jack C. Delaney and Paul Ross Roberts, Jr., as members of the Canvassing Board of the City of Key West for the general municipal election held on November 15, 1955, Victor Lowe, as City Clerk of the City of Key West and Jack C. Delaney, Appellees.
Supreme Court of Florida. Division B.
October 12, 1956.
*871 Robert H. Givens, Jr., Miami, for appellant.
M. Ignatius Lester, Key West, and Weldon G. Starry, Tallahassee, for appellees.
THOMAS, Justice.
In the chancery court the appellant prayed for a decree declaring that he had been the victor in a race for a place on the City Commission and requiring the City Clerk to issue a certificate showing that he had received more votes than his opponent, Jack C. Delaney, one of the appellees.
At the conclusion of the election, for reasons that will be implicit in the history of the contest we will presently relate, the members of the City Commission, sitting as the canvassing board, had declined to declare either candidate the winner.
After the issues were formed the plaintiff and the defendants moved for summary decree and all agreed that there was no need to take testimony so the Chancellor based his decision on the pleadings, depositions and admissions. He found that on the voting machines 2302 votes were registered for the defendant, Delaney, and 2234 for the plaintiff, Parra.
The controversy arose from the manner in which 256 absentee ballots were cast. On 247 of these a choice for the position sought by Delaney and Parra was indicated and of this number 49 were marked in favor of Delaney and 198 for Parra.
So if all absentee ballots should be rejected, Delaney would win; if all should be counted, Parra would win.
The matter is complicated by the fact, found by the Chancellor, that 96 of the absentee ballots were invalid because, to quote from his decree they "were not returned to the office of the Supervisor of Registration (the Clerk) by the elector or by mail" but were returned by other persons including Parra. These 96 ballots were commingled with the remainder of the 247 absentee ballots. Further to confound the *872 situation, 154 ballots, declared by the Chancellor to be illegal because the ones who cast them swore they expected to be absent from the city instead of the county as the law provides, were mixed with the other absentee ballots.
Moreover, other ballots were declared defective for varied reasons: On some the date of the application for them did not appear, on some the notary had not completed the jurat, on some there was the signature of but one witness, on some no signature at all. To cap it all, the chancellor found that the names and addresses of persons applying for absentee ballots during the week immediately prior to the election, had not been posted or published. Sec. 101.63, Florida Statutes 1955, and F.S.A. In fine, he held that requirements of the statute regulating absentee voting had been so generally disregarded that all votes of absentees should be rejected. As a consequence, the defendant, Delaney, who received a majority of votes personally registered on the machines was declared entitled to the office.
It is obvious that there was a sufficient number of challenged ballots to change the result of the election. We face the question whether they were so deficient as to render them void. The appellant introduces his argument here with the statement that the absentee voters did all the law required of them and that the irregularities held by the Chancellor to have rendered the ballots void should be charged to the default of the election officials and should not be held to have deprived the persons who cast the absentee ballots of the right to express a choice at a "`fair election.'" He cites State ex rel. Titus v. Peacock, 125 Fla. 810, 170 So. 309, as authority for the principle that if ballots are cast by voters qualified to cast them and the voters have done all required of them by law "an erroneous or even unlawful handling of the ballots by the election officers * * * will not be held to have disfranchised such voters." The law then in effect required the election officials to handle out-of-state ballots in a certain way. But we cannot stop with the quotation and subscribe to the thought that liberality of construction should be indulged to the point that appellant wishes us to extend it. In that very case the court recognized the rule that the right to vote is one the voter should personally exercise and that absentee voting, "being an exception to the general rule, cannot be authorized * * except ex necessitate rei * * *". The court announced that such voting was permissible only when the statute providing for it specified that the ballots should "not be deposited in the ballot boxes, nor the voter's name entered upon the poll lists, nor the vote counted until the ballot [had] first been made out by the voter himself upon a legal form of ballot, furnished to him under statutory safeguards and regulations equivalent in substance to those pertaining to personal voting by others at the prescribed polling places; that it must be transmitted by the voter to some election official exercising jurisdiction * * *, with power to receive it, examine its putative validity, and thereupon cause it to be counted * * *." (Italics supplied.) State ex rel. Titus v. Peacock, supra.
The statutes with reference to absentee voting must be strictly applied because they are not designed to insure a vote but rather to permit a vote in a manner not provided by common law. Frink v. State ex rel. Turk, 160 Fla. 394, 35 So.2d 10.
From these opinions, supra, it appears that much attention must be given by the voter, as well as the officials, to a ballot cast by an absentee in the exercise, in such substituted manner, of the right personally to cast a ballot. Cf. Carn v. Moore, 74 Fla. 77, 76 So. 337.
Appellant first deals with the 96 ballots not returned to the office of the Supervisor of Registration by the elector or by mail, but by other persons.
Since Secs. 101.61 to 101.70, inclusive, Florida Statutes 1955, and F.S.A., *873 were adopted by ordinance as part of the election laws of the City of Key West, we go to these statutes to ascertain the requirements affecting voting by absentees. In Sec. 101.66 it is provided that such a voter shall "[u]pon the receipt of the * * * ballot and printed instructions as provided in § 101.65 * * * in secret, mark his ballot, follow the instructions enclosed with his ballot, place only the marked ballot in the plain envelope and return same to the supervisor of the county in which his precinct is located." Appellant draws attention to the lack of any provision in the section for the method of returning the ballot. But we cannot stop here. In Sec. 101.65, supra, which must be considered with Sec. 101.66, supra, we find that among the instructions to be sent to the voter is one that the envelope containing the ballot must be returned personally or by mail.
Appellant thinks this instruction does not require mailing or personal delivery but was intended only to insure delivery by the time fixed in the act, the hour of five on the afternoon preceding the election. We disagree. This personal right to vote was safeguarded by requiring the voter personally to deliver his ballot in advance or to have it delivered by the Post Office Department of the United States Government. How the sureness of delivery by a stated time could have been the sole motive for the provisions is beyond us. Certainly a messenger could be sent with the ballot in ample time to reach his destination before the deadline. But no such means of delivery is approved. Delivery is permissible only in the two ways specified.
We find no occasion to explore the appellant's question whether or not the envelope containing the ballot could be sealed, stamped and sent by messenger to a post box for that was not done in this case.
In analyzing the chancellor's decree, we adverted to the 154 ballots condemned by the chancellor because of the language on the applications for ballots to be voted by absentees. The requisites of the application are detailed in Sec. 101.62, Florida Statutes 1955, and F.S.A. It is provided in the law that "[a]ny elector who will be absent on the day of an election from his home county, or who is physically incapable of appearing at the polling place" may apply for a ballot by signing a "blank" to be furnished by the supervisor and to be in substantially the form appearing in the statute. (Italics supplied.) The application is required to be signed and witnessed as "herein required." A place is provided where the applicant may check the "appropriate reason" for absence on election day. Two reasons are set out: physical disability and absence "from the county during the entire period the polls are open for voting on the day of election * * *." (Italics supplied.) Places are provided in the form for the signature of the voter, for the signatures and addresses of two witnesses and for the signature and seal of the notary or other officer taking the voter's oath.
In the application for ballots involved in the instant case the applicants stated they expected "to be absent from the said county on the day for holding election * * *." The first reason, disability, is stated correctly; the second is not, because it contains the phraseology "I expect to be absent from the City * * *" instead of the statutory language "I will be absent from the county * * *." (Italics supplied.)
In Frink v. State ex rel. Turk, supra, the court was dealing with a municipal election in which ballots of absentees had been obtained on an application carrying the statement that the voter expected to be absent from the "City" at the time of the election. This court held the application insufficient because of the use of the word "City" instead of the word "county." When that decision was rendered the statement of expectation was permitted by Sec. 101.07, Fla.Statutes 1941, and F.S.A., which was later amended to require the *874 statement that the applicant would be absent, but the ruling in respect of the substitution of the word "city" for "county" is as appropriate in this case as it was in that. Griffin v. Knoth, Fla., 67 So.2d 431.
On four applications no witnesses signed while 14 were signed by only one witness. Clearly these applications were not complete and could have formed no foundations for valid ballots.
It was obviously the intention of the legislature that the date of application for the ballot should be inserted for the proposed form has a blank space after the word "Date," yet 45 applications were wanting in this respect.
Evidently there was a failure to comply with Sec. 101.64, Florida Statutes 1955, and F.S.A., prescribing the form and contents of the certificate and jurat to appear on the envelope in which the ballot is returned to the supervisor. As we understand the appellant's brief, he concedes that the envelopes furnished the electors were insufficient in these respects, but he argues that inasmuch as the electors used the envelopes given them, the deficiency should be excused. He asserts that the votes were cast in good faith, which is not doubted, and that the voters assumed that the election officials "were furnishing them with a form which met the requirements of the statute and that they were not setting a trap for them to commit an irregularity which they could later use as the basis for having their ballots declared illegal if it proved to their advantage to do so." We are ignorant of anything in this record that warrants the insinuation couched in the words we have italicized.
We have not treated all of the defects found by the chancellor to have infected the ballots but we believe we have detailed a sufficient number to demonstrate that in the election the ballots deposited by persons purporting to act as agents for the absentees and ballots obtained on defective applications, should have been discarded. Since the illegal absentee ballots were sufficient in number to alter the result, the election should be determined by the votes registered on the machines. Wood v. Diefenbach, Fla., 81 So.2d 777; Griffin v. Knoth, supra; Rinehart v. State ex rel. Whitley, 145 Fla. 612, 200 So. 218.
Doubtless the officials charged with supervising elections of the city should overhaul the forms they have been using and in the future should adhere to the laws defining the procedure for properly furnishing ballots to absentees and determining upon their return whether or not they should be counted.
Although we cannot condone the furnishing of improper application blanks, the receiving of absentee ballots from persons other than the voters or agents of the Post Office Department, and the taking of ballots from envelopes defectively or improperly inscribed and mixing them with ballots enclosed in envelopes properly inscribed and obtained, we cannot subscribe to the theory that despite these defaults all the ballots should be purified. We do not find in the cases cited authority for this position. After an elector casts a ballot that is regular in all particulars, he transfers control to the election officials and should not be charged with their mishandling afterward. But it is another matter when the elector disregards statutory provisions that he should follow to make his ballot regular in all particulars, as was done in this case. He will not then be heard to claim that his ballot should be counted because he was innocent, due to ignorance of the law, or indifference to its provisions. Carn v. Moore, and Frink v. State ex rel. Turk, supra.
We think the chancellor was right and his decree is 
Affirmed.
DREW, C.J., and ROBERTS and O'CONNELL, JJ., concur.