292 So.2d 27 (1974)
Harry J. SPRADLEY, Appellant,
v.
Jesse Glenn BAILEY, a/K/a Glenn Bailey, Appellee.
No. U-96.
District Court of Appeal of Florida, First District.
March 8, 1974.
Rehearing Denied April 16, 1974.
*28 J. Lewis Hall, Joseph C. Jacobs, Ervin, Varn, Jacobs & Odom, Tallahassee, Hal A. Davis, Quincy, and A.K. Black, Lake City, for appellant.
William N. Avera, Chandler, O'Neal, Avera, Gray, Lang & Stripling, Gainesville, for appellee.
PER CURIAM.
This is an election contest. Appellant ran as the incumbent for the office of Sheriff of Columbia County in the 1972 primary elections. Appellee Bailey ran for the same office. When the precinct votes were counted, Bailey was ahead by a small margin of 36 votes. But, after the absentee votes were counted, appellant had edged ahead to a slight victory by 50 votes. The County Canvassing Board accordingly issued its certificate declaring appellant the duly elected democratic nominee for the office of sheriff.
Thereafter, appellee timely instituted this action contesting the election results on the ground that illegal absentee votes were counted in sufficient numbers to change the results of the election. Following settlement of the pleadings, an evidentiary hearing was held and the trial court entered the final judgment reviewed herein, holding that 456 of the absentee ballots cast and counted were invalid for various reasons enumerated in the final judgment and that said ballots materially changed the results of the election. The judgment further holds that the invalid ballots were so commingled with the valid absentee ballots that they could not be separated and, therefore, held that all absentee ballots should be discarded and the result of the election determined by the precinct votes cast by the electors. Accordingly, the trial court held that appellee Bailey received the highest number of votes and should have been certified the winner by the Canvassing Board and, therefore, entitled to the office of Sheriff of Columbia County.
It is the well settled rule of this jurisdiction that if illegal absentee ballots are cast in sufficient numbers to affect the results of an election, none of the absentee ballots cast in the election should be accepted and counted and the election will be determined upon the machine or precinct vote count. State ex rel. Titus v. Peacock, 125 Fla. 810, 170 So. 309 (1936); State ex rel. Whitley v. Rinehart, 140 Fla. 645, 192 So. 819 (1940); Griffin v. Knoth, 67 So.2d 431 (Fla. 1953), and Parra v. Harvey, 89 So.2d 870 (Fla. 1956).
While the trial court found 456 absentee ballots were illegally cast, it is only necessary that 51 of such votes be invalid since that number would affect the results of the election. The trial court found on the basis of the testimony given at the trial and by depositions received in evidence that numerous irregularities existed respecting the casting of absentee ballots. The trial court held that such irregularities violated the statutory provisions made concerning the method to be followed in applying for and casting absentee ballots and therefore ruled that such ballots could not be counted. That ruling is in accord with the holdings in Frink v. State, 160 Fla. 394, 35 So.2d 10 (1948); Wood v. Diefenbach, 81 So.2d 777 (Fla. 1955); Parra v. Harvey, supra, and McDonald v. Miller, 90 So.2d 124 (Fla. 1956).
Among the numerous witnesses who gave testimony was one Coretta Burney. As a campaign worker in behalf of some of the candidates in the primary election, she contacted 50 or more electors for the purpose of obtaining absentee ballots, and in every case she testified that it was she who delivered the ballots to the Supervisor of Elections of Columbia County after departing from the electors' homes in physical possession of the ballots. Such 50 or more ballots were clearly illegal. The election statutes provide that absentee ballots must be returned to the supervisor of registration either by mail or by personal *29 delivery by the elector himself. See McDonald v. Miller, supra, and Parra v. Harvey, supra. Testimony was received from another witness that one elector who had cast an absentee ballot died before the day of the election. That vote was invalid and could not be counted. State ex rel. Peacock v. Latham, 125 Fla. 793, 170 So. 475, 480 (Fla. 1936). There was testimony from 31 witnesses, either at trial or by depositions, who stated that they in fact were not absent from the county during the entire time the polls were open, yet their absentee ballots were nonetheless counted. In State ex rel. Whitley v. Rinehart, supra, the Supreme Court held that absentee votes cast by electors who were actually present on election day were invalid. There were numerous witnesses who testified as to irregularities and failure to follow the statutory provisions regarding the procurement and casting of absentee ballots. While it is unnecessary to catalogue all of the defects here, it suffices to state that the evidence adduced from testimonial witnesses alone was ample to support the trial court's ruling that there were enough invalid absentee ballots cast to affect the results of the election.
It seems well established from the cases cited herein that compliance by an elector with statutory requirements for exercising the privilege to vote absentee in an election is mandatory. Wood v. Diefenbach, 81 So.2d 777 (Fla. 1955). Since absentee voting is not designed to insure a vote but rather to permit a vote, such statutory requirements must be specifically followed and strictly construed. Frink v. State, supra; McDonald v. Miller, supra; and Parra v. Harvey, supra. Failure to adhere to such voting requirements by an absentee voter is not a mere technical violation as evidenced by the number of cases cited above in which election results have been changed following the discarding of invalid absentee ballots not complying with the statutory requirements relating thereto.
Appellant's primary thrust in this appeal is that the absentee ballots as cast and counted by the Canvassing Board should not be disturbed or admitted in evidence to impeach the official election return because the integrity of the ballot box has not been clearly established by the plaintiff in the election contest. This claim was presented to the trial court and there rejected on the final judgment by the following language:
"7. That throughout these proceedings the defendant, Harry J. Spradley, has maintained that the purity or sanctity of the ballot box has not been preserved but the court finds that the applications, certificates and ballots have in no way been altered and are in the same condition as they were in at the time they were canvassed."
Appellant's contention that the integrity of the ballot box had not been maintained rests on the conduct of the parties relating to the examination of the absentee ballots and return envelopes for the purpose of ascertaining whether there were enough bad absentee ballots to justify litigation over the election results. Following the issuance of the certificate by the Canvassing Board declaring appellant the winner in the election, the county judge and the supervisor of elections agreed to and did place the absentee ballots and the return envelopes in separate boxes and sealed them, taking precautions so that they could determine if the boxes were tampered with. These boxes were then taken to the county judge's office and locked in his vault. Two days after the canvassing, the county judge was approached in his office by appellee, who requested the opportunity to examine the return envelopes so he could determine whether to file a protest. The county judge unsuccessfully attempted to contact the supervisor of registration and other members of the Canvassing Board but upon researching the cases pertaining to the matter, the county judge determined *30 that appellee did have a right to examine the materials. See Barber v. Moody, 229 So.2d 284 (Fla.App. 1970).
After determining that the appellee was entitled to examine the materials, the county judge took the boxes from his vault to the office of the supervisor of registration where appellee, accompanied by helpers, was allowed to examine the box containing the return envelopes in the presence of the deputy supervisor of registration and the intermittent scrutiny of the county judge. During the course of this examination, the appellant appeared and demanded that appellee present to him a copy of the notes of irregularities being made. The county judge informed appellant that he could examine the documents when appellee finished but that the latter did not have to provide his notes. The witnesses testified that no document left the area during the examination, and no persons other than those involved in the inspection were allowed access to the documents. When the examination of the documents was completed, they were returned to the box which was resealed by the county judge and returned to his vault where they remained until they were placed in a vault of a local bank, pursuant to a court order. There was no testimony that any of the documents consisting of applications, certificates and ballots had been altered in any way.
While appellant is unable to point to any evidence of actual wrongdoing in connection with the examination of the documents by appellee, he points to the possibility that such conduct may have occurred and urges that the policy underlying the principle that the integrity of the ballot box may not be violated is to avoid the mere possibility that alterations and substitutions may occur. In support of this proposition, appellant cites Burke v. Beasley, 75 So.2d 7 (Fla. 1954), and Brake v. Gissendanner, 206 So.2d 10 (Fla.App. 1968), which cases stand for the proposition that the law is well settled that election ballots cannot be used to impeach an official return unless the integrity of the ballots is first clearly established by the plaintiff. Appellee concedes the rules announced in Burke and Brake, supra, but contends that the showing of a mere opportunity to violate the ballots is insufficient to warrant refusal to entertain them and related documents in evidence. Citing State ex rel. Miller v. Carmichael, 144 Fla. 319, 197 So. 857, appellee insists that a showing of a possibility that the ballots may be molested alone is not enough to preclude their use in evidence. We agree. In Carmichael, supra, the court quoted with approval from Tebbe v. Smith, 108 Cal. 101, 41 P. 454, the following language and indicated thereby that whether the ballots may be admitted in evidence is dependent on whether there has been proof that they had in fact been tampered with:

"Where a mode of preservation is enjoined by the statute, proof must be made of a substantial compliance with the requirements of that mode. But such requirements are construed as directory, merely, the object looked to being the preservation inviolate of the ballots. If this is established, it would be manifestly unjust to reject them merely because the precise mode of reaching it had not been followed. So too, when a substantial compliance with the provisions of the statute has been shown the burden of proof shifts to the contestee, of establishing that, notwithstanding this compliance, the ballots have in fact been tampered with, or that they have been exposed under such circumstances that a violation of them might have taken place. But this proof is not made by a naked showing that it was possible for one to have molested them. The law cannot guard against a mere possibility, and no judgment of any of its courts is ever rendered upon one. When all this has been said, it remains to be added that the question is one of fact, to be determined *31 in the first instance by the jury or trial judge; and, while the ballots should be admitted only after clear and satisfactory evidence of their integrity, yet, when they have been admitted, this court will not disturb the ruling unless we, in turn, are as well satisfied that the evidence does not warrant it."

In State ex rel. Millinor v. Smith, 107 Fla. 134, 144 So. 333 (Fla. 1932), the court held that ballots could be used to impeach the returns even though some person or persons unknown had unlawfully broken and entered a window in the supervisor's office where the ballots were kept. The court found that the right to a recount of the ballots to rectify an erroneous return "cannot be defeated through the showing of a mere conjectural possibility or likelihood that the integrity of the ballot boxes or of the ballots has been destroyed by someone's illegally tampering with them". The court further held that where the integrity of the ballots and ballot boxes is challenged:
"... it is the duty of the court, before sustaining such an objection, to make such an examination of the ballot boxes themselves, and such inquiry of the inspectors and clerks of election with regard to the integrity of the seals thereon, or concerning other conditions relating to the boxes, as will enable the court to draw the reasonable inference, from supporting evidence, that the integrity of the ballots no longer exists. To hold otherwise would permit the valuable rights of a relator to a correct count to be lightly defeated through slight circumstances deliberately contrived by some designing person to bring about a bare suspicion of irregularity, but not sufficient to prove it, to the effect that the ballot boxes containing the ballots have not been properly kept, or have been tampered with."
In view of the findings of fact made by the trial court and the foregoing decisional authorities, the judgment appealed herein is
Affirmed.
SPECTOR, Acting C.J., JOHNSON, J., and WIGGINTON, Associate Judge, concur.