299 So.2d 633 (1974)
Henry ESTEVA, Appellant,
v.
Tosie HINDMAN et al., Appellees.
No. U-260.
District Court of Appeal of Florida, First District.
June 11, 1974.
Rehearing Denied September 19, 1974.
Leo Foster, Tallahassee, and Henry Esteva, St. Petersburg, for appellant.
*634 Joseph C. Jacobs of Ervin, Varn, Jacobs & Odom, Tallahassee, and J. Michael Hayes of Gregory, Cours, Paniello & Johnson, Tampa, for appellees.
PER CURIAM.
This is an election contest initiated by appellant who was declared the unsuccessful candidate for the office of Judge of the Second District Court of Appeal of Florida. For the reasons hereinafter set forth, we are compelled to reverse the final summary judgment rendered by the trial court which dismissed the action initiated by appellant with prejudice.
Appellant Henry Esteva received a majority of 404 machine votes over his opponent, appellee Boardman, in the election for the office of Judge of the Second District Court of Appeal. When the 3,389 absentee ballots were counted, Boardman had edged ahead by 249 votes. No contention has been made as to the correctness of the votes cast via the voting machines, and this entire controversy involves the validity of the absentee ballots cast in this election.
The trial court found that of the some 1450 flaws and defects which the appellant has detected, only 88 set forth "a real basis to conclude that the ballots so cast may have been illegal." These 88 fall into four categories; to wit: the application for an absentee ballot was not signed by the applicant; the return envelope was not signed across the flap; the official title of the witness was not indicated; and the names of the electors were not on record. We could certainly agree that such ballots were illegal as being in flagrant violation of the statutes governing absentee voting. F.S. §§ 101.62 through 101.691, F.S.A. Our point of departure from the rationale of the trial court comes with the holding therein that failure to indicate the reason for voting absentee on the application form and the return envelope and failure to preserve the return envelopes were not deemed fatal to the validity and purity of the ballots cast.
F.S. § 101.62, F.S.A., sets forth the form of an application blank for an absentee ballot. Said form sets out the five legal reasons for voting absentee and the applicant is to check one of these as his reason for so voting. Unless the voter qualifies to vote by absentee voting by indicating in writing on the application for the ballot at least one of the five reasons for such absentee voting, the ballot becomes a nullity. F.S. § 101.63, F.S.A., provides that upon receipt of the application for absentee ballot, filled out and signed, it shall be filed and a list or card file kept of applicants to whom a ballot has been sent. F.S. § 101.64, F.S.A., provides for the manner and procedure of preparing and delivering the ballots to persons on the list provided for in § 101.63 and provides that an outer return envelope shall be included bearing a certificate. This certificate is in essentially the same form as the application blank, requiring the elector to again state his reason, by checking one of the five printed statutory grounds, for voting absentee.
In order to qualify as an absentee voter, it is mandatory that the elector indicate in writing his reason for voting absentee. Parra v. Harvey, 89 So.2d 870 (Fla. 1956).
The trial judge found that in his opinion there were 88 illegal votes cast. In Paragraph 2(d) the trial judge also found 95 ballots in which the absentee voters had failed to follow the statute by checking the appropriate reason for voting absentee, but the trial judge said that he determined such failures to follow the statute were not fatal to the validity of the ballots so cast. This is contradictory to all the Supreme Court of Florida decisions rendered, we believe, since 1955, as will be more fully discussed hereinbelow.
In Parra v. Harvey, supra, the Supreme Court of Florida pointed out that "On four applications no witnesses signed while 14 were signed by only one witness. Clearly these applications were not complete and could have formed no foundations for valid ballots."
*635 In the pleadings and evidence before the trial judge, there were more than enough illegal ballots, when gauged by the law as set forth in Parra v. Harvey, supra, that would affect and in fact change the results of the election. There must have been some valid reason for the Legislature enacting the provisions of the statutes granting authority to vote absentee and setting the guidelines which must be followed in order to vote validly absentee, and we think that the appellant has demonstrated enough illegal ballots which would turn the election results into his favor.
The certificate mandated by F.S. § 101.64, F.S.A., further requires the signature of the elector as well as the signature of an attesting witness, with his official title and address. A postal officer is required to apply his station cancellation stamp to this return envelope. § 101.64 also provides that "the absent elector and the attesting witness shall execute the said form on the envelope." F.S. § 101.65, F.S.A., sets forth the substantial form of instructions to be sent with each absentee ballot. Said form states: "Fill out the `Elector's Certificate' on the back of the envelope, sign... ." F.S. § 101.66, F.S.A., provides that the absent elector shall, in secret, mark his ballot, follow the instructions enclosed with his ballot, etc. F.S. § 101.67, F.S.A., provides, inter alia, that the supervisor shall deliver the envelopes, along with his list kept regarding said ballots, to the canvassing board and again reiterates the requirement that the application for absentee ballot be properly executed. F.S. § 101.68, F.S.A., provides for the method of canvassing absentee electors' ballots. The canvassing board is to compare the ballots presented to it with the list or card file required by § 101.63 and is to compare the information on the back of the envelope to see that the elector is duly registered, has not already voted, and to determine the legality of the absent elector's ballot. If it is determined that any vote is illegal, the face of the return envelope is to be so marked. Such envelopes and the ballot contained therein are to be preserved.
We have set forth the relevant portions of these statutes to illustrate that the Legislature has carefully promulgated specific procedures and safeguards to insure the integrity and purity of the absentee ballot. It cannot be doubted that such ballots, as compared with those votes registered on a voting machine, are susceptible to widespread abuse. For this reason, our Legislature has prescribed in detail the procedure which must be followed by the voter and the procedure to be followed by election officials in receiving, counting and preserving the ballot after it has been delivered.
Absentee voting was unknown to the common law. It is a privilege conferred by statute. Being in derogation of the common law, statutes which authorize absentee voting should be cautiously and specifically followed. Much attention must be given by the voter, as well as by those charged with the responsibility of receiving and counting votes, to a ballot cast by a voter, not personally, but by the substituted manner permitted by statute. The Florida Courts have long maintained and restated the principle that strict compliance with the statutory requirements for absentee voting is mandatory. State ex rel. Whitley v. Rinehart, 140 Fla. 645, 192 So. 819 (1940); Frink v. State ex rel. Turk, 160 Fla. 394, 35 So.2d 10 (1948); Jolley v. Whatley, 60 So.2d 762 (Fla. 1952); Griffin v. Knoth, 67 So.2d 431 (Fla. 1953); McDonald v. Miller, 90 So.2d 124 (Fla. 1956); Pappy v. Englander, 267 So.2d 111 (Fla.App. 3rd, 1972). In Wood v. Diefenbach, 81 So.2d 777 (Fla. 1955), it was recognized that compliance with the statutory requirements for absentee voting is mandatory and failure to so require is fatal to the ballot cast. And, as stated in Parra v. Harvey, 89 So.2d 870 (Fla. 1956):
"The statutes with reference to absentee voting must be strictly applied because they are not designed to insure a vote but rather to permit a vote in a manner not provided by common law."
*636 And again, in Frink v. State ex rel. Turk, supra, 35 So.2d at 12, the Court, in referring to a provision of the absentee voting statutes, stated:
"... The statute here must have a strict interpretation because: First, the statute was not enacted to grant the right to vote but rather to serve as a means to vote in a manner not recognized at common law; Second, the privilege was granted by the legislative body with full consciousness of its constitutional responsibilities for the ballot. The language of the statute is clear and the failure to comply with it renders the ballots of no effect. It is not a case of disfranchising a voter; he failed to comply with the law and for that reason his ballot was properly rejected."
With these statutory and judicial guidelines in mind, we now turn to the irregularities in the absentee ballots cast in the subject election. In addition to the 88 ballots found to be illegal by the trial court, there were found to be 16 in which the reason for voting absentee was not specifically indicated on the application for ballot and 79 in which such reason was not indicated on the certificate on the return envelope. However, it was concluded that failure to designate the reason was not fatal to the validity of the ballot because "the signature of the elector is adequate to at least certify that one or more of the reasons is applicable and in the case of the certificate on the return it is under oath." This is not the law nor is it what the statute provides. If the signature alone were adequate to certify that the elector had a valid reason for voting absentee, there would be no reason whatsoever for the statutory forms for application and for the certificate on the return envelope as provided by F.S. §§ 101.62 and 101.64, F.S.A., nor would there be any sense to the language in § 101.63 pertaining to the application being filled out and signed or the language in § 101.65 pertaining to the filling out and signing of the elector's certificate.
The trial court's opinion speaks of these and other discrepancies which "may be attributed more logically to human misunderstanding of minute technicalities than to lack of diligence to comply with essential requirements." It is further concluded in paragraph 5 that "strict construction of statutory requirements does not demand utter frustration when minor lapses occur, not disruptive of reasonable safeguards, which do not impair the integrity of the ballot of a qualified elector fairly cast." We do not consider the failure to indicate one of the five statutory grounds for voting absentee to be a "minor lapse." If an elector does not have a valid ground for casting an absentee vote, he simply may not do so. To allow him to do so would, in our opinion, disrupt the safeguards intended to surround such voting and would impair the integrity of the ballot. That the Courts of this State have not deemed a failure to indicate a legal reason for voting absentee a mere oversight or technical misprision is clear from the cases of Frink v. State ex rel. Turk, supra; Griffin v. Knoth, supra; and Parra v. Harvey, supra. In those cases, the Florida Supreme Court held that applications stating that the applicant expects to be absent from the city or the municipality on the day of the election, instead of the statutory language, "I will be absent from the county ..." were improper and ballots based thereon could not be counted. The Court further stated in Parra v. Harvey, supra, that when an elector disregards statutory provisions that he should follow to make his ballot regular in all particulars, he will not be heard to claim that his ballot should be counted because he was innocent, due to ignorance of the law or indifference to its provisions.
Turning now to the 429 absentee ballots cast, of which appellee Boardman received a majority of 155, in the counties of Glades, Hendry and Polk, it is our opinion that these too should not be counted for the reason that all of the return envelopes *637 were lost after the votes had been canvassed. We base this conclusion on the grounds stated above and also upon the ground that the parties to an election contest are entitled to have proof of the validity or the invalidity of the votes cast under the absentee voters statutes. Opportunity must be afforded to interested parties to interpose objections to an absentee ballot. By failing to preserve the certificated return envelopes, there was no opportunity for either candidate to insure that the ballots cast were legal. While there is case authority for the proposition that erroneous or even unlawful handling of the ballots by election officials will not be held to disfranchise absentee voters, these cases have specifically confined their rulings to votes which were legal in their inception and voters who have themselves fully complied with the provisions of the statutes. For example, in State ex rel. Titus v. Peacock, 125 Fla. 810, 170 So. 309 (1936), we find the following:
"The rule is general that, if ballots have been cast by voters who were, at the time, qualified to cast them, and such voters had at the time done all on their part that the law required the voters to do to make their voting effective, an erroneous or even unlawful handling of the ballots by the election officers charged with such responsibility will not be held to have disfranchised such voters by throwing out their votes on account of erroneous procedure had solely by the election officers, provided the votes were legal votes in their inception, and are still capable of being given proper effect as such." (Emphasis supplied.)
Due to the unavailability of the return envelopes containing ballots cast in Polk, Hendry and Glades Counties, there is no way possible to determine if the votes cast were legal in their inception. There is no way to determine if said votes were timely received, if they were signed by the elector, if the elector had a valid reason for voting absentee, if another person witnessed the signature of the voter or even if the names of the electors were on record.
There may have been votes counted which, if viewed by the contestants and/or the court, may have been illegal when gauged by the same rule of construction as found by the trial judge in paragraph 2(c) of his final summary judgment concerning the 88 illegal votes cast.
In short, there was no method of determining if the essential safeguards guaranteeing the purity of the absentee ballot were complied with, and such ballots should not have been counted.
Thus far, we have shown irregularities sufficient to invalidate 612 absentee votes cast in this election. These include the 88 found by the trial court, the 16 in which no reason for voting absentee was indicated on the application, the 79 in which no such reason was indicated on the return envelope, and the 429 in which the envelopes were lost in Polk, Hendry and Glades Counties. There are numerous other errors and omissions shown by appellant, such as vague identification of witnesses and omission of post office cancellation stamps and addresses of witnesses. Furthermore, we have grave doubts as to the validity of the Hillsborough County canvass of absentee ballots, which numbered 453, with regard to the fundamental requirement of the secrecy of the ballot. However, we do not deem it necessary to rule on these other alleged irregularities in light of our conclusion that the irregularities found are sufficient in number to affect the results of this election.
It is the settled rule of this State that where the number of illegal absentee ballots cast is sufficient to change the result of an election, none of the absentee ballots cast in the election will be accepted and counted, and the election will be determined upon the machine or precinct vote count. See Griffin v. Knoth, supra; Parra v. Harvey, supra; Spradley v. Bailey, 292 So.2d 27 (Fla.App. 1st, 1974) and cases cited therein. It is only necessary *638 that 250 votes be found invalid in order to affect the results of the instant election, inasmuch as Boardman was declared to be the winner by 249 absentee votes. The number of illegal absentee ballots as found from the pleadings being far in excess of 250, it is our conclusion that the election for Judge of the Second District Court of Appeal should be determined by the votes registered on the machines of which appellant Esteva received a majority of 404.
Accordingly, the final summary judgment appealed herein is reversed. Due to the length of time which has elapsed since the election and the filing of this appeal, we see no reason to remand this cause to the trial court for further proceedings, and we hereby declare appellant, Henry Esteva, to be the winning candidate for Judge of the Second District Court of Appeal.
Reversed.
JOHNSON, Acting C.J., SPECTOR, J., and DREW, E. HARRIS, Retired, Associate Judge, concur.