STATE OF FLORIDA, ex rel. VICTOR HUTCHINS, *Petitioner*, vs. R. T. TUCKER, Supervisor of Registration of Orange County, Florida, and R. M. SHEARER, a member of the Board of County Commissioners of Orange County, Florida, as members of and constituting a majority of the County Canvassing Board of Orange County, Florida, *Respondents*.

143 So. 754.

Opinion filed October 4, 1932.

*Pleus, Williams & Pleus,* and *R. L. Williams,* for Petitioner;

*E. W. Davis* and *Allison E. Palmer* as amici curiae.

BUFORD, C.J.—The Relator filed petition for Mandamus to compel the Canvassing Board of Orange County to canvass and include in their tabulation certain ballots alleged to have been cast by absent voters under the provisions of sections 382 R. G. S., 429 C. G. L., et seq., which the said Canvassing Board had refused to canvass and include in their tabulation of results in the Primary Election for the nomination of a Democratic candidate for the office of County Judge of Orange County. Alternative writ was issued. A return was filed by the Respondents which admitted in effect the allegations of the petition. Thereupon motion was filed for the issuance

of peremptory writ of mandamus. The cause came on to be heard on briefs and argument of counsel, as well as briefs and argument by Messrs. E. W. Davis and Allison E. Palmer as amici curae.

First, it is contended that the statute under which the absentee ballots were cast is in conflict with section 6 or Article VI of the Constitution, with section 9 of Article VI and with section 26 of Article III of the Constitution. We find nothing in the act which could be construed to be in conflict with section 26 of Article III or with section 9 of Article VI of the Constitution. Of course, the provisions of many statutes might be so perverted as to be used as a shield behind which the Constitution might be violated, but there is nothing in the statutes here under consideration which requires the violation of either of the sections of the Constitution above mentioned.

It is most earnestly contended that the sections under consideration violate section 6 of Article VI of the Constitution because by the use of the method therein provided for voting the secrecy of the ballot is destroyed, and this is true, but there is no provision of the statute which compels the voter to pursue that method of voting and if the voter does pursue that method it is in the exercise of the free and voluntary choice of the voter. In other words, all people in this country, unless in the custody of the law, or in the service of their country, have the right to go when they please and where they please on all lawful missions and all electors not in custody of the law, or in the service of their country, have the right to be a their respective voting precincts on the day of the election and to there cast their secret ballots for the candidates of their choice and they cannot be compelled to divulge the identity of such candidates. The statute here under consideration, however,

has provided a method by which the elector may waive the privilege of the secrecy of his ballot and yet vote although his business, pleasure or convenience may cause him to be at some other place than his voting precinct on the day of election. We can conceive of no method by which an absentee voter could cast his ballot without his identity with the ballot being provided for and being maintained from the time it is prepared by him until it reaches the Canvassing Board. Without the joinder of such identities there could be no way of determining the elector's right to vote. Therefore, the elector may choose whether he will suffer the necessary inconvenience occasioned by his remaining to vote in his precinct and preserve the secrecy of his ballot or will move according to what he conceives to be the exigencies of his business or pleasure and waive the secrecy of his ballot.

We may say that it has been uniformly held that under such provisions as that contained in section 6 of Article VI of our Constitution the elector cannot be compelled to violate the right of secrecy of his ballot but the great weight of authority is to the effect that such constitutional provision guarantees a personal privilege which might be waived. In State vs. Anderson, 26 Fla. 240, 8 Sou. 1, this Court, speaking through Mr. Chief Justice Raney, said:

"The Constitution provides, section 6, Article VI, that in all elections by the people the vote shall be by ballot, and in those by the Legislature it shall be *viva voce*. The material guarantee of this constitutional mandate of vote by ballot is inviolable secrecy as to the person for whom an elector shall vote. The distinguishing theory of the ballot system is that every voter shall be permitted to vote for whom he pleases, and that no one else shall be in position to know for whom he has voted, or shall know *unless the voter shall of his own free will inform him.*" Cooley's Constitutional Limitations, m. p. 604, et seq. (Italics ours).

Mr. Cooley in his excellent work on Constitutional Limitations, 7th Ed., Page 912, says:

"The system of ballot-voting rests upon the idea that every elector is to be entirely at liberty to vote for whom he pleases and with what party he pleases and that no one is to have the right or be in position to question his independent action, either then or at any subsequent time. The courts have held that a voter, even in case of a contested election, cannot be compelled to disclose for whom he voted; and for the same reason we think others who may accidently or by trick or artifice, have acquired knowledge on the subject should not be allowed to testify to such knowledge, or to give any information in the courts upon the subject. Public policy requires that the veil of secrecy should be impenetrable, unless the voter himself voluntarily determines to lift it; his ballot is absolutely privileged," * * *

This enunciation was followed with approval in Jenkins vs. State Board of Elections of North Carolina, 180 N. C. 169, 104 S. E. 346.

In the case of Jenkins vs. State Board of Elections, supra, the Court said:

"The plaintiff contends that the statute violates the provision of our Constitution which provides that elections by the people shall be by ballot, arguing that this means a secret ballot in all elections. We admit that voting by ballot, as distinguished from viva voce voting, means a secret voting, and that the elector in casting his ballot has the right to put it in the box and to refuse to disclose for whom he voted, and that he cannot be compelled to do so. But this privilege of voting a secret ballot has been held to be an entirely personal one. The provision has been generally adopted in this country for the protection of the voter and for the preservation of his independence, in the exercise of this most important franchise. But he has the right to waive his privilege and testify to the contents of his ballot. The voter has the right at the time of voting voluntarily to make public his ballot, and its contents in such case may be proven by the testimony of those who are present. Pub-

lic policy requires that the veil of secrecy shall be impenetrable unless the voter himself voluntarily determines to lift it.''

So it is that we hold the statute here under consideration to be valid.

Section 275 R. G. S., 331 C. G. L., provides in part as follows:

"On receiving the ballot, the elector shall forthwith and without leaving the polling place, retire alone to one of the booths or compartments provided for that purpose, and there prepare his ballot by marking with pen and ink or pencil, in the appropriate margin or place a cross mark (X) before the name of the candidate of his choice for each office to be filled, or by filling in the name of the candidate of his choice in the blank space provided therefor, and marking the cross mark (X) in the appropriate margin,'' * * *

Section 369 R. G. S., 430 C. G. L., provides in part as follows:

"Thereupon the affiant shall be given an official ballot printed like the other official ballots as to national and State candidates, constitutional amendments, county and district candidates, and such voter shall write in the names of such candidates in the blank space left for that purpose not printed thereon as he may desire to vote for and mark the same as any resident voter, as prescribed by the general election and primary election laws of the State of Florida,'' * * *

The petition and return show that of twenty-two (22) absentee ballots not counted sixteen (16) were attempted to be voted for the candidates to be nominated for the office of County Judge. That on two of such ballots there was no identification of the voter and no way to determine by whom the ballot was attempted to be voted, and, therefore, no way of knowing whether or not the person attempting to cast the ballot was or was not a legal voter. These ballots were properly rejected.

That as to three of such ballots there was no voter's

affidavit accompanying the same as is required under the statute. These ballots were properly rejected by the Canvassing Board.

That as to four of such ballots it appears that the envelop in which the ballots were transmitted to the County Judge were not signed by all of the inspectors of the election precinct at which the ballots were deposited by the elector. Non constat and adopting the presumption that the return of the respondents is as strong as it can be made in their favor, these envelopes were signed by a part of the inspectors, which we consider a substantial compliance with the provisions of the statute. Therefore, these ballots were illegally rejected and should be counted.

As to one of the ballots it is shown that there was no designation of the office for which the candidate was voted for by an elector. This ballot was properly rejected.

Four of such ballots had slips of paper pasted thereto upon which were written the names of the candidates with the office to be voted for and were marked as required by statute. This we deem to have been a substantial compliance with the provisions of the statute above quoted and these ballots were illegally rejected and should be counted.

On one of such ballots there appeared a slip of paper attached with a paper clip with the name of the candidate and the office for which he was a candidate and the mark of the voter to indicate his vote for such candidate. This method we deem inadequate to comply with that provision of the statute authorizing the elector to fill in the name of the candidate of his choice in the blank space provided therefor, because attaching the necessary paper to the ballot with a paper clip is not such a permanent affixing of the additional paper for space in

which to write the name of the candidate to the ballot as to necessarily indicate that such additional paper is to constitute a part of the ballot. Therefore, this ballot was properly rejected.

The other ballot appears to have been accompanied by an unattached slip of paper upon which had been written the name of the candidate with a mark indicating a vote for such candidate, but this slip of paper for the same reasons last above mentioned could not be held to be a part of the ballot, and was, therefore, properly rejected.

It is contended here that some other person should be substituted in the place of the County Judge as a member of the Board of Canvassers to canvass the returns of the election because the County Judge was himself a candidate in that election and must of necessity pass upon the legality of the ballots. We think that this contention is untenable because the statutes specifically provide that all Canvassing Boards shall be composed of certain officials and it is also clear and must be judicially noticed that the Legislature at the time it enacted such statutes well knew that such officers would be candidates in elections which they were required to canvass.

It, therefore, follows that inasmuch as the peremptory writ of mandamus, if issued, must follow the alternative writ of mandamus the peremptory writ cannot issue in this case because the alternative writ requires the respondents to "properly, correctly and accurately count, tally and record all of the said uncounted, untallied and unrecorded twenty-two absent voters' ballots cast at the said Second Primary Election of June 28th, 1932, for the two candidates for the nomination of the Democratic Party as its candidate for the office of County Judge of Orange County, Florida, and a proper, correct and accurate canvass made of the vote of the said Second Primary Election, in so far as the same relates to the votes

cast for the two candidates for the nomination of the Democratic Party as its candidate for the office of County Judge of Orange County, Florida, to be voted on at the next ensuing general election;'' when the record shows that there are eight of such ballots which cannot be legally counted and canvassed and only eight of such ballots may be legally counted and canvassed. So the peremptory writ will be denied, with leave for the Petitioner within five (5) days to amend his alternative writ.

It is so ordered.

WHITFIELD, TERRELL, BROWN AND DAVIS, J.J., concur.

ELLIS, J., not participating.