STATE, *ex rel.* H. E. GANDY, v. HARVEY E. PAGE, County Judge of Escambia County, B. L. DAVIS, Supervisor of Registration of Escambia County, and H. A. BROSNAHAM, Chairman of County Commissioners of Escambia County, as and constituting the County Canvassing Board of Escambia County.

170 So. 118.

Opinion Filed October 14, 1936.

Rehearing Denied October 31, 1936.

454

*J. McHenry Jones, John L. Reese* and *Harry Botts,* for Relator;

*William Fisher* and *Philip D. Beal,* for Respondents.

PER CURIAM.—In this case alternative writ of mandamus issued to which demurrer was filed. This Court in ruling on the demurrer held the Florida 1935 Absentee Voters Registration Statute (Acts.1935, Chapter 16987) unconstitutional. An amended alternative writ was then allowed eliminating from the proceedings all votes except those absentee votes affected by the decision holding the absentee registration law invalid.

The present proceeding has been now limited solely to the question of disposition of the thirty-six votes mailed in by persons whose registration as electors for the 1936 primaries was accomplished solely by mail under Chapter 16987.

It is not the duty nor province of the respondents as members of the County Canvassing Board to raise nor challenge the legal qualification of either relator or his opponent to be nominated to the office of Sheriff of Escambia County, so

the motion to strike the portion of respondents' return relating to that question is granted. This is especially true after the declared results of a first primary have already eliminated from being voted on by the electors candidates whose qualifications might entitle them to be reconsidered should one of the second primary candidates be held disqualified for election. See: State, *ex rel.* Knott, v. Haskell, 72 Fla. 176 (22nd headnote) 72 Sou. Rep. 651. We hold therefore, as against collateral attack, both relator and his opponent to have been qualified candidates for office in the second primary of June 23, 1936.

In considering and disposing of the absentee ballots that purported to have been cast by out of State absentee voters pursuant to Chapter 16986, Acts 1935, the County Canvassing Board acted not only as an authority to canvass such votes, but as the authority charged with the duty and administrative responsibility of ascertaining and determining whether such out of State absentee votes had been cast by persons entitled to cast such votes and to have them counted as part of the final result. The decision of the board on the question of counting or not counting votes tendered as out of State absentee votes pursuant to said Chapter 16986, Acts of 1935, is accordingly a legal question that, like the determination of other administrative legal questions, is reviewable in mandamus. See: State, *ex rel.* West Flagler Amusement Co., v. Rose, 122 Fla. 227, 165 Sou. Rep. 60; West Flagler Amusement Co. v. State Racing Commission, 122 Fla. 222, 165 Sou. Rep. 64; State, *ex rel.* Williams, v. Whitman, 116 Fla. 196, 150 Sou. Rep. 136, 156 Sou. Rep. 705, 95 A. L. R. 1416. See also: State, *ex rel.* Hutchins, v. Tucker, 106 Fla. 905, 143 Sou. Rep. 754. So mandamus lies to the respondents performing functions under Section 2 of Chapter 11824, Acts of 1927, and Chapter 16986, Acts

1935, to have set aside and excluded from the final count and canvass of the vote, any properly challenged out of State absentee votes that cannot be legally counted because the voters tendering same were never legally registered, or otherwise not entitled to vote the same.

The effect of the primary election statutes is to make the official registration books prepared by the Supervisors of Registration sufficient evidence of lawful registration to entitle persons personally registering therein to vote, inasmuch as voters personally registering in registration books necessarily perform their acts of registration within the jurisdiction of the State and are presumed as a matter of law to have appeared before the Supervisor of Registration or his deputy and to have then complied with all legal requirements entitling them to be registered before their registration was permitted. Such personal registrations are therefore not subject to collateral attack in these mandamus proceedings because the election officials alone are the only respondents and the title to a nomination to office alleged to have been derived as a result of an election in which such books were used cannot be inquired into. In the case of the absentee registrations under Chapter 16987, the attack is for *want of jurisdiction to register* on the ground that there was no jurisdiction to permit the registration of electors outside the territorial limits of the State of Florida, hence a collateral attack is permissible. This eliminates in the present case any consideration of the validity or effect of Chapter 15629, Acts 1931, as applied to the controversy now before the Court, and matters pertaining to that subject should be stricken from the return.

Sections 365, 366 C. G. L., 309, 310 R. G. S., require a new registration of primary election voters every two years in election precincts located wholly or in part in a city of more than twenty thousand population. Such biennial reg-

istration pertains only to primary elections and not general elections. It is provided for as the means by which voters in the larger precincts *record their party affiliations* at each succeeding primary election. While under the statute a registration in the primary election books amounts to a permanent registration for the ensuing general election because the statute provides for the primary election registration to be transferred to the general election register by the Supervisor 'without any further act on the part of the registrant, yet the special statutory primary election registration is not in its legal effect like the general election registration. The latter is to be deemed perpetual so long as the voter retains his qualifications to be considered a registered voter of the precinct in which he once lawfully registers for the general election, because the statute does not require biennial registrations for general elections.

But as to the primary elections, a new registration *accompanied by a new declaration of party affiliation* in precincts lying wholly or partly in cities of more than twenty thousand population is required every two years. And at the end of the two-year period the old registration, by virtue of Sections 365 and 366 C. G. L., 309 and 310 R. G. S., become *functus officio* and is therefore of no force and effect for ensuing primary elections. This is true simply because Sections 309 and 310 C. G. L., so provide and these sections were in no respect repealed or modified by the terms of Chapter 16987, Acts of 1935, that has been declared unconstitutional. So it was incumbent on every person desiring a vote in a precinct lying wholly or partly in a city of more than twenty thousand population at the 1936 primaries to reregister and make a new declaration of party affiliation during the 1936 registration period or thereupon cease to be a voter lawfully registered to vote at such 1936 primaries, although still retaining registration and the right to vote in

general elections because of a prior unexpired registration for the latter class of elections. This is so, because no one is entitled to vote in a *party* primary absent a declaration of his party affiliation as a member of the particular party whose primary is being held and the effect of Sections 309 and 310 C. G. L. is to cancel and wipe out, at the end of each two-year primary election registration period, the declaration of party affiliation previously made by a primary election voter when registering to vote in precincts lying wholly or in part in cities of more than twenty thousand population.

If any of the thirty-six persons whose out of State absentee votes have been challenged in this proceeding were registered in prior years in precincts of Escambia County *not* lying wholly or in part in a city of more than twenty thousand population, and have retained since the date of their original registration their lawful qualification as to residence and otherwise, entitling them to remain registered in the precinct of their prior registration outside such city of more than twenty thousand population, that fact should be made to appear. And if so made to appear, it will be sufficient to sustain the registration qualification of the affected voter, because in such instance, the registration book is all the evidence of the registration that is necessary to sustain the respondents in their decision to count such votes as against the command of the amended alternative writ in this case not to do so.

The motion to strike is granted. The demurrer to the return is sustained with leave to file a further return within five days if advised, in default of which the peremptory writ is awarded. The decision in this case is without prejudice to any other proceedings now pending involving votes other than the particular thirty-six votes herein involved.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.