65 So.2d 871 (1953)
BOWDEN et al.
v.
CARTER.
Supreme Court of Florida, en Banc.
May 8, 1953.
Rehearing Denied July 20, 1953.
*872 Richard W. Ervin, Atty. Gen., Howard S. Bailey, Asst. Atty. Gen. and J. Henry Blount, Jacksonville, for appellants.
William A. Carter, pro se.
PATTERSON, Associate Justice.
This cause comes before this court on appeal by respondents below from a final decree of the Circuit Court of Duval County entered upon a petition for declaratory decree, seeking a construction of and testing the validity of sections 97.111 and 101.111, Florida Statutes 1951, F.S.A., being sections of the Election Code of 1951.
Petitioner, then a duly registered Democratic elector of Duval County, voted for a majority of the Republican nominees and did not vote for a majority of the Democratic nominees in the general election of November 1950. On July 29, 1952, he sought to have his registered party affiliation changed from Democratic to Republican but was refused because of the operation of section 97.111 as the same was construed by the respondent Supervisor of Registration. He therefore found that if challenged in either the Democratic Primary then to be held in October of 1952 or in the general election of November 1952, he could not make the oath required by section 101.111. Consequently, by the combined effect of the two sections his right to vote in both or either of such elections was impaired. His petition, filed July 30, 1952, challenges the constitutionality of section 97.111 as construed by the Supervisor of Registration, and challenges section 101.111 as will appear later in this opinion.
As indicated, the pleadings below raise several questions with regard to the construction and validity of section 97.111. By the effect of the decrees entered below the lower court found it unnecessary to consider the objections raised to section 97.111. In its final decree, the court said "Petitioner also challenges the validity of section 97.111 of the Election Code of 1951, which prohibits any change of party affiliation during the period between a general primary and the following general election. Inasmuch as Petitioner in the previous decree has established his right to vote in the general election in November and in this decree has established his right to vote in the October Democratic Primary, the Court does not find that the operation of said section 97.111 deprives Petitioner of any substantial right and declines to declare said section 97.111 invalid." Inasmuch as there was no adjudication on section 97.111 below, there is no question before us as to that section except whether the court below should have proceeded to such adjudication.
In addition to the challenge to section 97.111, the petition challenged the constitutionality of section 101.111, initially as applied only to general elections, but by amendment of the petition, as applied also to party primary elections. Prior to such amendment, and based upon admissions in respondents' answers, petitioner procured a summary final decree styled "Summary Final Decree upon that portion of the Petition contained in Paragraph Four Thereof," the significant provisions of which are:
*873 "3. That in the application of said section 101.111 to general elections, so much thereof as provides that the affidavit to be tendered to a challenged voter shall contain the words:
"that I am a member of the ____ party and that at the last general election I voted for a majority of the nominees of such party;"
is unconstitutional, null and void.
"4. That, after eliminating from said section 101.111 in its application to general elections, the aforesaid invalid portion, the true intent and meaning thereof is that the affidavit directed to be tendered to a challenged voter at a general election shall not contain the words quoted in paragraph 3 of this decree."
No assignment of error is addressed to that adjudication and it is therefore not before us for review.
The cause below proceeded to final decree, entered on September 19, 1952 wherein it was decreed by the lower court as follows:
"(1) That so much of section 101.111 of the Election Code of 1951 as purports to require any elector offering to vote at any primary election to make an affidavit that at the last general election he voted for a majority of the nominees of any political party is unconstitutional and void, and that no elector shall be denied the right to vote at any primary election who refuses to make such an affidavit."
The respondents have brought this provision of the final decree here for review.
It is suggested by petitioner-appellee that inasmuch as he has now changed his registered party affiliation to Republican, the operation of section 101.111 does not now operate to deprive him of his right to vote either in his party primary elections or in general elections, wherefore all questions raised on this appeal are moot as to him. We think, however, that the declaration by the lower court of the invalidity of portions of section 101.111 as applied in primary elections is of sufficient public interest that this court may review it. Pace v. King, Fla., 38 So.2d 823.
The precise question to be decided is whether or not, as applied in a party primary election to a prospective voter situated as petitioner, the party fealty oath contained in section 101.111 of the Election Code of 1951 is unconstitutional and void by reason of either section 1 or section 6 of Article VI of the Constitution of Florida, F.S.A. It is urged here that the oath violates section 1 in that it constitutes a modification of the constitutional qualifications of an elector, and that it violates the secrecy of the ballot in violation of section 6. Sections 1 and 6 of Article VI are as follows:
"Section 1. Every male person of the age of twenty-one years and upwards that shall, at the time of registration, be a citizen of the United States, and that shall have resided and had his habitation, domicile, home and place of permanent abode in Florida for one year and in the county for six months, shall in such county be deemed a qualified elector at all elections under this Constitution."
"Section 6. In all elections by the Legislature, the vote shall be viva voce, and in all elections by the people, the vote shall be by ballot."
The party loyalty oath in section 101.111 reads: "____, that I am a member of the ____ party and that at the last general election I voted for a majority of the nominees of such party".
It is universally recognized that where the constitution prescribes the qualifications for suffrage, the legislature is powerless to modify such qualifications. This court has so held in Riley v. Holmer, 100 Fla. 938, 131 So. 330. It has also held that the effect of section 6 of Article VI is to provide for secrecy of the voting ballot and applies to party primary elections as well as general elections. State ex rel. Smith v. Anderson, 26 Fla. 240, 8 So. 1; State ex rel. Hutchins v. Tucker, 106 Fla. 905, 143 So. 754.
In the course of the history of the closed primary election as a political institution in this country, election laws similar to the section here under attack have been carefully tested and considered against precisely *874 the same objections raised here, and without important exception they have been universally upheld. 9 RCL, Elections, sec. 88 and 89; State ex rel. v. Flaherty, 23 N.D. 313, 136 N.W. 76, 41 L.R.A., N.S., 132; Lett v. Dennis, 221 Ala. 432, 129 So. 33; State ex rel. Webber v. Felton, 77 Ohio St. 554, 84 N.E. 85; State ex rel. Adair v. Drexel, 74 Neb. 776, 105 N.W. 174; Ladd v. Holmes, 40 Or. 167, 66 P. 714; State v. Michel, 121 La. 374, 46 So. 430, 434; Kelso v. Cook, 184 Ind. 173, 110 N.E. 987; People ex rel. Lindstrand v. Emmerson, 333 Ill. 606, 165 N.E. 217.
With regard to the contention that the statute here considered is an unauthorized limitation on the right of suffrage, the courts have upheld such limitations as applied to primaries on a recognition of the distinction between general elections, in which all qualified electors are entitled to participate, and party primary elections, limited by definition and by statute to bona fide members of the party. We think the distinction is too well settled to require further elaboration here. And so it is also with regard to the contention that a party loyalty oath disclosing that the elector voted for a majority of the candidates of his party at the last general election violates the secrecy of the ballot. In upholding such loyalty oaths, some courts have apparently held that since participation in a primary election is voluntary, an elector who participates may not complain of disclosure of his previous vote. We do not think it necessary to go so far in considering the oath before us. In State v. Tucker, supra, this court upheld absentee voting against the contention that it violated secrecy of the ballot, on the ground that an elector, in choosing to use the privilege of absentee voting, thereby waived his constitutional right to a secret ballot. However, this court has not yet said that the act of voting in a primary in the normal manner amounts to such a waiver. For the purpose of the case before us, we think it sufficient to hold that the oath here considered does not in fact violate the secrecy of the ballot. By the bare act of registration of his party affiliation, an elector voluntarily discloses his political preference for such party and manifests his adherence to its tenets in the exercise of his franchise as an elector. The oath here considered amounts to no more than a test of the bona fides of an elector's registration in the party. We think that the failure to vote for a majority of the party's candidates is so inconsistent with affiliation with such party that it is reasonable for the legislature to say that such act nullifies party affiliation and is sufficient to bar participation in the selection of that party's candidates. The oath taken by the challenged elector is no more revealing of his vote than is his registered party status itself. The particular candidates for whom and against whom he may have voted remain his own secret and his constitutional right to secrecy of his ballot is maintained. In Lett v. Dennis, supra [221 Ala. 432, 129 So. 34], the court said: "It is equally well settled that such a test in no manner violates statutory provisions for the secrecy of the ballot, for as has been well said `it is the secrecy of the ballot which the law protects and not secrecy as to the political party with which the voters intend to act." * * *
"A further answer to this insistance is that the statutory provisions for preservation of secrecy of the ballot is for the protection of the voter against the conduct of others, and in no manner is intended as restrictive of any voluntary act of his own. The authorities hold that his participation in the primary election either as voter or candidate is entirely voluntary on his part, and by so entering the primary he thus voluntarily subjects himself to the reasonable rules and regulations prescribed therefor."
To a like effect it is said, in State v. Felton, supra [77 Ohio St. 554, 84 N.E. 90.]: "Political parties have existed in this state for nearly a century. An elector cannot belong to one without impliedly disclosing for whom he has voted or for whom he will vote, and, in view of the party practice, as it has so long prevailed, of prescribing a requirement, like that in the statute, as a test of an elector's right to act with the party, it is not apprehended that it will be contended that the practice *875 has been in violation of the Constitution, and, if not, then it does not become so merely because it is recognized by the statute. Affiliation with the party and participation in the primary still are voluntary. Moreover, compliance with the requirement will not disclose that the elector voted for any particular candidate."
It was the expressed reasoning of the lower court and the basis of appellee's argument here that irrespective of the rule in other jurisdictions, the Florida cases of In Re Hawthorne, 116 Fla. 608, 156 So. 619, 96 A.L.R. 572, and State ex rel. Gandy v. Page, 125 Fla. 348, 169 So. 854, have committed this court to the view that party primary elections are elections within the purview of section 1, Article VI, and that therefore the challenged portion of section 101.111 must fall under authority of Riley v. Holmer, supra.
In the Hawthorne case [116 Fla. 608, 156 So. 622], speaking through Mr. Justice Davis, this court said: "So a primary election held under the primary election laws of this state may properly be said to be an `election' within the purview of section 26 of article 3 of the Constitution, requiring statutes to be enacted to preserve election from undue influence exerted by `Improper practices.' And this court so holds." And in the Page case [125 Fla. 348, 169 So. 857], again speaking through Mr. Justice Davis, this court said: "The primary election laws are a part of the general election machinery of the state." We do not quarrel with either decision so far as it goes. In the former, it was held that primary elections are such elections as may be regulated by the legislature under section 26 of Article 3, quite apart from any consideration of section 1 of Article VI. In the latter case, it was held that, inasmuch as primary elections are part of the elective process, only electors duly qualified under section 1 of Article VI may participate. We have not heard it contended otherwise. But we think the lower court was in error when it concluded therefrom that primary elections are "elections under this Constitution" within the meaning of section 1 of Article VI. Reading further from the Gandy case we find: "The primary election laws are a part of the general election machinery of the state. Under their present effect, as interpreted by this court, no candidate is eligible to have his name printed on the general election ballot as a candidate for elective office in opposition to major parties' candidates, if the latter have been nominated in the general June biennial primary elections. Primary elections are therefore the beginning of the operation of the general election laws that must ultimately result in the actual choice of our elective public officers. As such, our primary election law amounts to a policing and regulation of the method and means by which the political activities of the qualified electors defined by section 1 of article 6 of the Constitution (who are bona fide members of the recognized major political parties of the state) are ultimately exerted in the final choice of elective officers." Clearly such opinion affirms the existence and legality of the "method and means" of political selection wherein the total qualified electorate voluntarily divides itself into mutually exclusive political parties, the integrity of whose primaries may be protected by statute, such as is accomplished by Sec. 101.111 Florida Statutes 1951. "Conceding, as any student of free government must, that the party system is essential to our political life, we can well understand how short lived the party would be unless some means was afforded to maintain party integrity." Mairs v. Peters, Fla., 52 So.2d 793, 795.
We hold that section 101.111, Florida Statutes 1951, F.S.A., as applied to appellee, is valid against the constitutional objections raised. Therefore so much of the decree appealed from as holds the same invalid when applied in a party primary election is reversed.
ROBERTS, C.J., and THOMAS, SEBRING, MATHEWS and DREW, JJ., concur.
TERRELL, J., dissents.