## LASSETER v. DADE COUNTY BOARD OF RULES AND APPEALS, et al.
### No. 61-L-3586.

Circuit Court, Dade County.

April 23 and June 18, 1962.

192

Leo M. Alpert, Miami, for petitioner.

Darrey A. Davis, County Attorney, St. Julien P. Rosemond, Ass't. County Attorney, for respondent Dade County Board of Rules and Appeals.

Paul A. Louis and Bertha Claire Lee, both of Miami, for respondent Marks Brothers Co.

HAL P. DEKLE, Circuit Judge.

*Opinion and order granting petition on certiorari:* This is a petition for certiorari brought by H. O. Lasseter, Jr., a master plumber engaged in that business in the city of Miami and in Dade County, to review and quash a decision of an administrative body, the Metropolitan Dade County Board of Rules and Appeals.

That board's decision authorizes and directs that a plumbing permit be issued for the installation of storm and sanitary sewer lines on a housing job in the city of Miami by a firm, Marks Brothers Company, which, and the members of whom, are concededly not plumbers but "engineering contractors". The decision holds that the permit " . . . was erroneously denied by the Supervisor of the Division of Plumbing Inspection of the Building Department of the City of Miami . . . and . . . may be properly

issued under the provisions of the South Florida Building Code (Section 4601.5 (d) (2) to any qualified contractor currently licensed in that field, in the instant case, as an engineering contractor as defined in Section 10-1(k) of the Code of Metropolitan Dade County, qualified by Paul Marks under Certificate of Competency No. 1316E."

It was stipulated by all parties both in argument and by written stipulation that "any and all Dade County ordinances and codes are a part of the record in this cause".

The basic question involved is whether an "engineering contractor" has the right to install the sanitary and storm sewer lines (called "utility lines" in the above decision) within private property on a housing job in the city of Miami or whether, as the petitioner contends, the installation of such a sewer line, storm and sanitary, is exclusively the work of a person holding a certificate of competency as a plumber.

There is no dispute as to the material facts and it is conceded both in the briefs filed by the respective parties and in oral argument that the Marks Brothers Company, none of the members of whom hold a certificate of competency as a plumber but whose member Paul Marks holds a certificate of competency as an engineering contractor, entered into a subcontract to install the "sanitary sewer, storm sewer, drainage structures, manholes, etc." at the low-rent housing job within the city of Miami, Florida, known as Abe Aronovitz Villas, the work of Marks Brothers in this connection to commence at a point 5 feet outside the building and to run from that point out to the property line; that such work would be work done on private property as distinguished from work in or on streets, etc.; that a sanitary sewer line as involved here is the run of pipe carrying sewage and waste starting 5 feet outside the building (where it connects with the building sewer, i.e., the sewer piping in the house) and ending at the property line (where it connects, generally, to a larger pipe running to the point of ultimate disposition). The storm sewer is a separate run of pipe over the same area, carrying rain and surface water. (See section 4602 South Florida Building Code for all these definitions and standards)

## Proper Parties

The first legal point raised by the respondents is that on the record the City of Miami or its officials are the only proper parties to seek a review of the decision below and that this petitioner has no standing, because of lack of interest, to file a petition for certiorari.

As to the contention regarding the City of Miami or its officials it is apparent from the South Florida Building Code and from the sections of the Metro Code previously cited that the City of Miami in issuing permits is subject to the direction and control of the director of the Metropolitan Dade County Building and Zoning Department who is the official responsible for the enforcement of the building and zoning laws of the county (see Metro Code sections 2-117, 2-118, 8-1, 8-2, 8-4).

As to that same contention, and the contention that the particular petitioner here has no standing to sue, this court has no doubt that the petitioner here as a master plumber has the necessary status in view of the particular record in this case which discloses a recognition of the petitioner's standing at page 12 of the transcript of the proceedings before the respondent board, again at page 20, again at page 22, and again at page 27, which discloses the following colloquy and agreement —

*"Chairman Headley:* I believe under the circumstances if you would appear as counsel for interested parties in this appeal hearing, it would have the same effect.

*"Mr. Alpert:* I would be very happy to, yes."

In addition, the South Florida Building Code provision would seem to contemplate that persons might be aggrieved by certain decisions of the Board of Rules and Appeals, necessarily as those decisions affect the building industry, even though those persons might not be parties to the decision, because section 203.7 of the South Florida Building Code reads — "Any person aggrieved by a decision of the Board of Rules and Appeals, *whether or not a previous party to the decision,* may apply to the appropriate court for a writ of certiorari to correct errors of law of such decisions. * * * " (Emphasis supplied.) It would be unnecessary for that paragraph to contain the language authorizing any person to appeal "whether or not a previous party to the decision" unless it was contemplated that a broad reach for the industry was intended in so far as the status of the complainant was concerned. It must be kept in mind that the South Florida Building Code, as this court understands it, is directed at resolving practical building and construction industry problems in a practical businesslike way, not at legalisms.

Finally, the court is impressed by the opinion in City of Birmingham v. Allen, Ala. 1948, 36 So.2d 297, which held at page 299 —

"There is no doubt that the occupation of a plumber is connected with the public health and as such is a proper subject for police regulation. In recognition of this fact the legislature adopted the Plumbing Code (Section 115 et seq., Title 62, Code

of 1940). The occupation being connected with the public health and safety, the legislature has seen fit to forbid all but those qualified by experience, examination and license from engaging in the occupation within the localities defined in Sections 115 and 127, Title 62, Code of 1940. It is common knowledge that an improper installation of plumbing might endanger the lives or health of a community, because for example a waste line might be connected with a fresh water line. It seems to us that complainant as a resident citizen has an interest in the proper installation of plumbing within the community and since his livelihood is dependent on an occupation for which he is fitted and has qualified himself as contrasted with others who are not so qualified and fitted, he has a pecuniary interest in seeing to it that those not qualified and fitted be excluded. We think the complainant has the right to question the proviso in the ordinance."

Compare also City of Coral Gables v. Seiferth, Fla. 1956, 87 So.2d 806.

It was further contended that the petition should be dismissed as moot because the installation of the sanitary and storm sewers involved had been completed by the time this cause came on for oral argument. Mootness, however, does not rest on that simple assertion alone. Moreover, questions such as the ones at bar involving wide public interest and importance and the duties and responsibilities of administrative officials are from a standpoint of sound and proper judicial administration to be adjudicated rather than dismissed, as the court understands the Florida doctrine enunciated in Barrs v. Peacock, Fla. 1913, 61 So. 118; State ex rel. Railroad Comsrs. v. Southern T. & Const. Co., Fla. 1913, 61 So. 119; Tau Alpha Holding Corp v. Board of Adjustments, Fla. 1937, 171 So. 819; and Bowden v. Carter, Fla. 1953, 65 So.2d 871.

The petitioner raises the point that section 203.3(e) of the South Florida Building Code reading as follows has not been complied with — "Four members of the board shall constitute a quorum. Decisions shall be [by] at least four favorable votes. * * * " In this case the decision was not by four favorable votes but by a three to two vote and therefore, on this technical ground, the decision below would have to be reversed because it is erroneous in law through not following the prescribed statutory procedure which must be taken to be mandatory rather than permissive.

The court, however, for reasons previously stated does not wish to and does not rest on this narrow and technical ground.

The matter of the time within which certiorari is to be brought was conceded by the county in oral argument and brief. This and

other technical points raised by the various parties have been considered and found to be without sufficient merit to require further extended treatment or discussion.

This court has jurisdiction and the merits may properly be reached.

### Board Jurisdiction

Respondents raise the question whether the Board of Rules and Appeals or the Examiners Mediation Board is the board having the jurisdiction to determine who may do plumbing work, engineering contracting work, etc. The question as put is too broad for this proceeding. The answer to the narrower question, however, as to which has the jurisdiction in this case is to be found in the South Florida Building Code and the Contractors Licensing Ordinance.

The South Florida Building Code, as previously stated, is directed at resolving practical building and construction industry problems in a practical businesslike way. It is, as its preface states, directed to the development "of better building construction and greater safety to the public through uniformity of building laws, the granting of full justice of all building materials on a fair basis of true merit of each material, and to the development of a sound economic basis for the future growth of the area through unbiased and equitable structural design, inspection and the protection of human life and property from fire and other hazards."

The preparation of the code, as the preface states, was sponsored by the Dade League of Municipalities with the cooperation of the Dade County Commission and was participated in by a great number of trade associations and persons involved in and connected with the building industry. The South Florida Building Code was thereafter adopted by ordinance no. 57-22 of the Metropolitan Board of County Commissioners and is also known as chapter 8 of the Metropolitan Code.

Section 203 of the South Florida Building Code creates the Board of Rules and Appeals and vests in that board a number of powers — to hear all appeals from the decisions of the building official from any person aggrieved thereby (section 203.4(a); to interpret the code at the request of the building official (section 203.4(b); to conduct investigations into the enforcement of the code and to have "the power to suspend or revoke any permits issued thereunder after a hearing at which interested persons may appear and be heard and evidence indicates that the best interests of the public are served by such actions" (section 203.4(c); to

"affirm, modify or reverse the decision of the building official" (section 203.5(b); "to suspend or revoke permits as specified in paragraph 203.4(c)" (section 203.5(d).

The Examiners Mediation Board was created by ordinance 57-25 which bore the original title "Examination and Qualification of Contractors, Subcontractors, Masters, Journeymen and Maintenance Personnel" and which thereafter under the heading of the Contractors Licensing Ordinance or "Contractors" became chapter 10 of the Metro Code.

Under chapter 10 six examining boards were created to have jurisdiction over examination, qualification, disciplinary action and certificate of competency of six types of persons engaged in the building industry, namely, building contractors, engineering contractors, plumbing contractors, electrical contractors, mechanical contractors, and liquified petroleum gas installation contractors (Metro Code section 10-20). The Examiners Mediation Board was given these powers and duties —

> The Examiners Mediation Board shall be empowered to decide questions arising which pertain or are applicable to more than one of the examining boards created by this chapter, including, but not limited to questions of jurisdiction as between the examining boards in carrying out their duties and questions of establishing uniformity and consistency in the rules, procedures and actions of these various examining boards. The rulings of the Examiners Mediation Board shall be final and shall be complied with by the examining boards concerned. (Metro Code section 10-21(c).

It would appear plain to the court that the Examiners Mediation Board was created to establish, as section 10-21(c) states, uniformity and consistency in the rules, procedures and actions of the various examining boards; to prevent one board from encroaching upon or being encroached upon by another; and generally to see that the boards keep within their defined bounds, this conclusion being virtually required by the concluding sentence in section 10-21(c) which reads "The rulings of the Examiners Mediation Board shall be final and shall be complied with by the examining boards concerned" and by section 10-21(d) which reads — "Matters to be considered by the Examiners Mediation Board may be referred to it by any of the examining boards or by the secretary of such board or the matter may be initiated by the Examiners Mediation Board."

This conclusion also appears required by the consideration that the Examiners Mediation Board in sitting and mediating disputes between *examining boards* would necessarily come to rulings that would not be communicated to or known to other persons but to the particular boards involved and that no right of appeal or review is granted: the "rulings shall be final".

The Examiners Mediation Board, therefore, has no jurisdiction in the area of permits, which is the questioned area involved in the case at bar. Just what the precise scope and boundary of the jurisdiction of the Examiners Mediation Board may be is not proper for this court to determine at this time. Even if such a determination were possible such a scope must necessarily be determined by particular cases and not by a broad theorem.

### Peculiarly Plumbers Area

On the merits of this controversy, the determination by the Board of Rules and Appeals is clearly erroneous as a matter of law.

That the installation of storm and sanitary sewer lines is plumbing work cannot be questioned and is in fact not questioned in this case; that plumbers and plumbers alone had been doing such work on private property for at least the last 27 years is established by the testimony in the transcript; that the doing of plumbing work by a person in any populated area has an intimate relation to the health of that area is a truism which was recognized at least as long ago as 1915 as an examination of the Florida Statutes shows, chapter 6944 of the Acts of 1915 having provided that in every city in the state of Florida having a population of 10,000 or more there be a board of examiners for plumbers, that a certificate of competency be required, etc. The Act of 1915 was amended in 1917 by lowering the requirement to every city in Florida of 7,500 or more and by certain other changes not material to this decision. This intimate relationship between plumbing and the public health was stated by Justice Terrell in his opinion in Gause v. City of Miami, Fla. 1952, 59 So.2d 258, in which regulation in the city of Miami was required because "improper installations might produce disastrous results". Compare City of Birmingham v. Allen, Ala. 1948, 36 So.2d 297, cited supra, because both cases express the same concern for the public health and safety.

The determination of the Board of Rules and Appeals below, in which the public health and safety was not mentioned, was ostensibly based on the board's construction of section 4601.5 (d) (2) of the South Florida Building Code, the chairman of the board having professed himself as being unable to understand that section.

That section, however, is plain and clear to this court and was also plain and clear, in so far as this particular issue is concerned, to Circuit Judge Goldman in his decision in Hildebrandt v. Dade County Board of Rules and Appeals, 18 Fla. Supp. 124, app.

dism'd no opinion DCA3, 133 So.2d 804, cert. den. no opinion DCA3, 133 So.2d 796. That section reads —

Application for plumbing permit will be accepted only from contractors currently licensed in their respective fields and for whom no revocation or suspension of license is pending; provided that application for a plumbing permit for all excavation work for plumbing, on or in public streets or thoroughfares, and all sewer, drain, soil, waste or vent work will be accepted only from a person currently certified and having in his possession a Master Plumber's Certificate, valid within the limits of jurisdiction of the Plumbing Inspector, and for whom no revocation or suspension of license is pending. . . .

Whether the first clauses in the above section should be read to apply only to contractors licensed in the plumbing fields, namely the fields of plumbing contractor, septic tank contractor, gas fitting contractor and well drilling contractor, as is argued by petitioner, or whether that clause applies to any contractor who is licensed in his particular field as is argued by respondents, would seem to this court to be immaterial in this case because the following phrases expressly require that applications for permits for "all sewer, drain, soil, waste or vent work will be accepted only from a person currently certified and having in his possession a master plumber's certificate".

Without necessarily agreeing or disagreeing with Circuit Judge Goldman's other conclusions in the Hildebrandt case, supra, it is nonetheless significant to point out that in so far as this particular issue is concerned the same conclusion was reached by Judge Goldman who stated —

"Admittedly, certain work designated as plumbing by the provisions of subsection 4601.5(d)(2) may only be accomplished by a master plumber and no other contractor is permitted to perform such work. * * * "

The respondents, however, contend that if section 4601.5(d)(2) be so construed, that section has been repealed by the subsequent enactment of the Contractor's Licensing Ordinance which defines engineering contractors in section 10-1(k) as follows —

(k) "Engineering contractor" is a contractor who does work such as, but not limited to: harbors; docks; excavating; filling and grading; drainage and drainage facility, including dry-well, catch-basin and the connecting nonferrous pipes between the catch-basin and dry well; pile-driving; levees; pumping stations; and similar type of work in conjunction with water power, water control, waterworks and water supply; paving and sidewalks; retaining and property line walls; curbs and gutters; streets and roads, bridges and overpasses and underpasses in streets, roads, and public thoroughfares; underground sewage collection and disposal systems, bulkheading and underground utility line construction; both sanitary and storm sewer systems, and similar work.

"General engineering contractor" is a contractor whose construction work involves two or more trades or crafts, who has financial means to undertake the work and the knowledge gained by not less than ten years' experience either as a superintendent for a general engineering contractor or as a licensed building or engineering contractor for such period (or has had any education equivalent thereto) or any combination thereof, and has satisfactorily passed a general engineering contractors' examination, and has shown that his scope of operation should be unlimited as to the complexity of design of the construction he undertakes. A general engineering contractor shall not be limited in the scope of work he undertakes and he may contract and take out permits for any and all work or trades connected with the construction industry except that in those trades for which a "master" is specifically required, he shall subcontract with a qualified contractor holding a current certificate of competency in that field. All permits for soakage pits, dry-wells, catch basins and connection pipes on private property shall be secured from the plumbing division and installations made in accordance with Chapter 46 of the South Florida Building Code.

It is to be noted, in the first place, that repeal was not the basis of the decision below; instead, the Board of Rules and Appeals squarely held section 4601.5(d)(2) to be applicable.

In the second place, authority is not needed for the proposition that a repeal by implication is not favored and that the basic rule of statutory construction is to endeavor to read all statutes in pari materia and to reconcile rather than repeal.

Various interpretations might be placed on section 10-1(k). The court, however, finds it unnecessary to delve into interpretation for the reason that the particular and the specific should prevail over the general. Section 4601.5(d)(2) specifically requires the doing of all sewer, drain, soil, waste or vent work only by master plumbers, so that such specific declaration should prevail and the two ordinances be reconciled to that extent.

An additional ground for this view is the existence, since 1915, as has been heretofore pointed out, of the Plumbing Law of the State of Florida which requires that any person desiring to engage in or work at the business of plumbing, "either as a master plumber or employing plumber or as a journeyman plumber" in cities having a population of 7,500 or more and a system of water supply or sewerage shall be examined and qualify before engaging in that work. The court takes judicial notice that the city of Miami has a population of 7,500 or more and a system of water supply and sewerage.

Under article XIII, section 11, of the constitutional amendment providing for "Home Rule" for Dade County, subparagraphs 5 and 9, it is expressly provided that nothing in the constitutional amendment shall limit or restrict the power of the legislature to

enact "general laws which shall relate to Dade County and any one or more counties in the state of Florida or to any municipality in Dade County and any other one or more municipalities of the state of Florida" and that the provisions and general laws "which shall relate to Dade County and any one or more counties of the state of Florida or to any municipality in Dade County and any other one or more municipalities of the state of Florida" shall be the supreme laws in Dade County unless expressly excepted.

It is of course a fundamental postulate that an ordinance which conflicts with a state law is illegal and invalid. (City of Coral Gables v. Seiferth, Fla. 1956, 87 So.2d 806; Dade County v. Mercury Radio Service, Inc., Fla. 1961, 134 So.2d 791.)

Chapter 469 of the Florida Statutes, it should be noted, is found in the title "Regulation of Professions and Vocations" and plumbers are regulated together with midwives, physicians, osteopaths, chiropractors, chiropodists, optometrists, nurses, pharmacists, architects, funeral directors and embalmers, professional engineers, land surveyors, public accountants, and the like.

This legislative regulation of the enumerated professions and vocations would appear as a matter of law to preclude county or municipal ordinances allowing persons not so licensed to do such license-required work. The court wishes to make it clear that a "lowering of standards" is not suggested nor is there any reflection on engineering contractors.

The fact is that the legislature requires both *the plumbing contractor* — the master — and *his employee* — the journeyman — to take plumbing examinations and qualify before doing plumbing work in cities; that plumbing is directly and intimately related to the public health; and this declaration of policy and law cannot be circumvented by contending that other persons may be as qualified as licensed plumbers. Of course they may but the safety of the community, the legislature has declared, lies in requiring a license of competency to do the work in order to minimize the dangers therein, because a licensed person is more apt to be qualified than an unlicensed one. And when the legislature requires this not only of *the contractor* but of *the employee* also, a requirement which engineering contractors do not meet because their employees are not required to be holders of certificates of competency, then there can be no question of the propriety and wisdom of such regulation and legislative enactment which is paramount.

Under these circumstances, for the respondent Marks Brothers to contend there is a monopoly, that the "true motive behind the plumbers' position" is a desire to "appropriate to themselves only

for economic reasons the right to install sanitary and storm systems on private property" is a misuse of language. There is no forbidden monopoly or economic detriment in regulation for public health and safety in the professions and vocations. See for example People ex rel. Nechamcus v. Warden (1895), 144 N.Y. 529, 39 N.E. 686, 27 L.R.A. 718.

The court is aware of and has examined Atwater v. City of Sarasota, Fla. 1949, 38 So.2d 681; City of Hollywood v. Bair, Fla. 1957, 93 So.2d 60; City of Coral Gables v. Burgin, Fla.App.3d 1962, 135 So.2d 771; City of Miami Beach v. Cowart, Fla. 1959, 116 So.2d 432; and other cases cited by the respective parties.

The decision of the Metropolitan Dade County Board of Rules and Appeals dated August 23, 1961 set forth at the outset hereof is hereby quashed and this cause is remanded to said board for further proceedings pursuant to and in conformity with this opinion and order.

*Order denying petition for rehearing:* This cause came on duly for hearing before me on petition for rehearing of respondents on May 31, 1962, and counsel for respective parties were heard.

The court has particularly re-examined the case of City of Hollywood v. Bair (Fla. 1957), 93 So.2d 60, urged by respondents as controlling, and also the opinion by the Honorable Ted Cabot, Circuit Judge, 15th judicial circuit in and for Broward County, in Jones v. City of Fort Lauderdale, No. C62-291.

City of Hollywood v. Bair gave approval to an ordinance adopted "as an emergency measure" to allow septic tank installers to "pitch in" to meet installation of a crash program for an extensive sanitary sewer system. The court's opinion granted such approval "under the limitations of the ordinance" and under the circumstances, and pointed out that such installers who were not plumbers were nevertheless required to pass an examination qualifying them to make such installations.

The same common denominator of requiring examinations was also present in the able opinion of Circuit Judge Cabot in the Jones case, wherein the ordinance required engineering contractors to meet an examination and approval by the Plumbing Contractors Examining Board, and cites City of Hollywood v. Bair on the same point, thus meeting the requirements for protection of public health and qualification. The present ordinance of Dade County in this cause does not similarly provide.

Petition for rehearing is denied.