QUESTIONS: 1. Does the phrase "to aid or promote his nomination in any election" in s. 104.71(1), F.S., limit the applicability of the statute to primary elections, or is the reference to "his nomination" synonymous with "his candidacy," thus making said section applicable to all primary or general elections? 2. If question 1 is answered affirmatively, does s. 104.071, F.S., apply to a municipal election as well?
SUMMARY: The phrase "to aid or promote his nomination in any election" in s. 104.071(1), F.S., does not limit the application of s. 104.071 to primary elections, but such section is applicable to all elections provided by law, including nonpartisan municipal elections. AS TO QUESTION 1: Section 104.071, F.S., entitled "Remuneration by candidate for services, support, etc.; penalty" provides in part: (1) It is unlawful for any person or candidate who shall, in order to aid or promote his nomination in any election, directly or indirectly, himself or by or through any other person to: (a) Promise to appoint another person, promise to secure or aid in securing appointment, nomination or election of another person to any public or private position, or to any position of honor, trust or emolument, except one who has publicly announced or defined what his choice or purpose in relation to any election in which he may be called to take part, if elected . . . . At this point it should be noted that s. 104.071(1)(a), F.S., contains an exception to the general prohibition against "position promises," when a candidate "has publicly announced or defined what his choice or purpose" is in regard to such an appointment. In considering an Iowa statute similar in language to s.104.071(1)(a), supra, the Iowa Supreme Court, in Wiedenheft v. Frick, 11 N.W.2d 561 (Ia. 1943), held that the statutory prohibition against "position promises" for votes did not apply to a candidate who in a public meeting states that, if elected, he would reappoint a popular official liked by the voters. The Iowa court based its decision on the trial court's analogy that to prohibit a candidate from publicly declaring his intention to offer a satisfactory person for a particular position was comparable to prohibiting candidates generally from commending or condemning, during an election, other appointive officers who come in contact with the public. I do not believe that the legislature, by the language employed in s. 104.071(1)(a), supra, intended to preclude a candidate from making an honest, honorable and public bid for electorate preference as opposed to a secret or otherwise private agreement by which delivery of a block vote is contemplated. The apparent object of s. 104.071(1), supra, is to prevent corruption and deception of all kinds in securing voter preference at the polls and in this regard s. 104.071 should be enforced to accomplish its obvious legislative purpose. As a general proposition a violation of any of the provisions of s.104.071, supra, being penal in character, would require in most circumstances that it be strictly construed as a candidate would be subject to disqualification to hold the office to which he aspires because of the misdemeanor conviction involved. (See s.104.071(2).) Ex parte Hawthorn, 156 So. 619, 624 (Fla. 1934). However, considering at least the apparent history behind s.104.071(1) and the evil sought to be corrected and regulated by this section, as well as the object to be obtained from it, that is to prevent corruption and deception of all kinds in the securing of a voting preference at the polls, it would appear that this manifest intent of the law would require consideration of all statutory provisions which relate to "candidates for nomination." See State v. Holmer, 35 So.2d 396, 398 (Fla. 1948) and State v. Patterson, 65 So. 659, 660 (Fla. 1914). Formerly the offenses against suffrage, ss. 875.31, 875.33, 875.34, 875.39, 875.42, and 875.43, F.S. 1949, which have been incorporated into and form the basis of s. 104.071, supra, only included acts which occurred during a "primary election." Under the Election Code of 1951, Section 8, Ch. 26870 1951, Laws of Florida, each portion of revised s. 104.071 which incorporated the language of the former statutes, referring specifically to "primary election law," or "primary elections," was changed to read "any election." Considering the history of Florida's elections prior to 1951, the primary election was tantamount to an election to office as opposed to a nomination to office which in later years attained the basic objective of a "primary election," i.e., the selection of a party nominee to an elective office. It is a well-settled rule that the intent of a valid statute is ascertained by the language of the enactment itself; however, if the language, as in the instant case, does not necessarily express or convey a clear intent, then some intention must necessarily be imputed by an inference grounded upon sound legal principles. When the legislative intention can be ascertained with reasonable certainty by considering the whole chapter itself, then certain words may be altered or supplied in a statute so as to give it effect that would avoid any repugnancy or inconsistency with the legislative intention expressed by the act or revision as a whole. Haworth v. Chapman, 152 So. 663 (Fla. 1933) and State ex rel. Dade County v. Dickinson, 230 So.2d 130, 135 (Fla. 1969). Section 104.071, supra, must be read in its entirety to determine the intent of the legislature and the application of this section to the conduct of various and sundry persons whose actions may be considered in violation thereof. Standing alone, and taken literally, the disembodied phrase "to aid or promote his nomination" in s.104.071(1) might be considered to relate solely to primary elections wherein the candidate is seeking "nomination to an office." However, the subsequent phrase "in any election" is directly related to the phrase nomination to an office and in considering the legislative intent one should not separate the two phrases. Thus to determine legislative intent we must consider that the language of s. 104.71(1) relates to an act to aid or promote a person's nomination in any election. This phrase standing alone would indicate that the legislature had some intention to control the practice of "vote bargaining" whenever it occurred in the nomination or election of a person to any public office. Accordingly, the phrase any election may be considered to include the several types of elections set forth in the Florida Election Code, s. 97.021(1) through (4), F.S., i.e., primary elections, special primary elections, general elections, and special general elections. Referring to the phrase any election, Black's Law Dictionary, 4th Revised Ed., defines "any" to mean, in part: Some; one out of many; an indefinite number . . . "any" does not necessarily mean only one person, but may have reference to more than one or to many. * * * * * It is often synonymous with "either" . . . and is given the full force of "every" or all. The word any is an adjective defined by the English dictionary to mean one or more without specification or identification. The Random House Dictionary, Unabridged Edition. The term "election" has as its primary meaning the act of choosing, Pearson v. Taylor,32 So.2d 826 (Fla. 1947) and Alexander v. Booth, 56 So.2d 716 (Fla. 1952). The language of the statute in question is broad enough to embrace and, in fact, does ipsissimis verbis embrace, "any election held in this state" at the time of the enactment as well as any other such election which may thereafter be established or required pursuant to law. The term "any election" would appear to exhaust the various categories of elections, i.e., primaries or general. Cf. Ballard v. Cowart, 238 So.2d 484 (2 D.C.A. Fla., 1970). See also Bowden v. Carter, 65 So.2d 871, 875 (Fla. 1953); Gandy v. State, 2 So. 465 (Ala. 1887); Johnson v. Grand Forks County, 113 N.W. 1071. Primary elections are as much a part of the election machinery of our state as a general election itself. Under present election laws, no candidate except a minority party or independent candidate is authorized to have his name printed on a general election ballot as a candidate opposing another majority party's candidate for the same office unless he has first secured his nomination through a primary election. State v. Page,169 So. 854 (Fla. 1936). Persons voted for in an election are commonly referred to as "candidates," but with reference to their selection as such candidates, they are "nominees" [State v. Hirsch,24 N.E. 1062, 1063 (Ind. 1890)], and the terms nominee and candidate have been treated as being synonymous. State v. Board of County Commissioners of Lincoln County, 131 P.2d 278, 284-285 (N.M. 1942). The Campaign Financing Act of 1973, Ch. 73-128, Laws of Florida, indicates that the legislature considered anyone who has filed qualifying papers would be a candidate [see s.106.011(1)(a), F.S.] for any type of an election, be it a primary election, general election, or municipal election. The statute itself refers to elections generally defining them to be "for the purpose of nominating or electing candidates to public office." (Emphasis supplied.) [See s. 106.011(5), F.S.] It is begging the question to assume that a party nominee would lose "his nomination" as soon as the results of a primary election were certified. A primary election is but a part of the general election process. It would appear that after successfully seeking nomination for an office the candidate would continue to hold his nomination until such time as he is either elected to the public office or is defeated at the general election. Cf. Leonard v. Commonwealth, 4 A. 220 (Pa. 1886); State v. Drexel, 105 N.W.2d 261, 268 (Tex. 1932). Correspondingly, corrupt election practices are no less iniquitous in a primary election than if they had occurred in a general election. Cf. AGO 064-3.
It is, therefore, my opinion that s. 104.071(1), F.S., is applicable to all primary and general elections held pursuant to law. AS TO QUESTION 2: Section 104.45, F.S., permits a municipality to adopt the state election laws. If a municipality adopts the state Election Code it appears that such authority relates to the "procedural" aspects of conducting an election in the municipality as distinguished from statutory prohibitions against fraudulent acts or corrupt practices which could occur in any election, federal, state, county, district or municipal. See AGO 064-3. Accord: Attorney General Opinion 071- 330, fraudulent acts or corrupt practices. However, in ex parte Senior,19 So. 652, 657 (Fla. 1896), relating to illegal voting at an election for mayor in the City of Pensacola, the general law of the state (s. 2787, Rev.St.) provided, in part, that whoever casts, knowingly, an illegal vote at an election in this state held according to law "shall be punished by imprisonment . . . or by fine" and the court held: The provisions of this statute are broad enough to cover illegal voting at municipal elections, and one who knowingly cast an illegal vote at the election in question would be subject to the penalties of the statute. (Emphasis supplied.) In Weithborn v. Adelstein, 201 So.2d 643 (3 D.C.A. Fla., 1967), cert. den'd without opinion, 207 So.2d 455, the district court considering the application of ss. 104.01 et seq., and s. 104.45, F.S., held that the enactment of an ordinance incorporating, by reference, the state Election Code had the effect of making the state statutes ordinances of the city so that violations thereof could be prosecuted under the jurisdiction of the municipal court to the same degree as any other municipal ordinance violation. If the purity of elections cannot be protected, the system of government which we now enjoy will decay. Statutory prohibitions against corrupt practices as set forth in Ch. 104, F.S., are as applicable to a municipal election as they are to a state, county, or national election, for "corruption" is not restricted to any particular jurisdictional boundary. For this reason, and as indicated by the aforecited cases, I do not believe that the citizens of a municipality should be deprived of the protection of the general laws of this state intended to prohibit corrupt practices in an election. The method or manner of selecting or electing municipal officials varies from municipality to municipality. The diversity of local charter acts and other local provisions causes some confusion in that a city's nonpartisan regular election may be both a nominating and general election at the same time. See AGO 073-345. In a recent case, State v. Brown,298 So.2d 487 (4 D.C.A. Fla., Case No. 73-505, decided August 9, 1974), the Court, using AGO 064-3, supra, as rationale for its decision, stated in part that "the prohibitions of and penalties for corrupt practices contained in Chapter 104 apply to all elections in this state, including municipal elections." (Emphasis supplied.) What must be remembered in applying the provisions of s. 104.071, supra, is that the various prohibited activities are applicable to "any election." Although a municipal election is nonpartisan, it is still an election. Question 2 is answered in the affirmative.